671 So.2d 864 (1996)
Clayton Lee MYERS, Appellant,
v.
Theodore LEHRER, M.D., American Breast Screening Centers, Inc., Richard Alan Barnett, individually, and Donald B. Wheeler, individually, Appellees.
No. 95-0070.
District Court of Appeal of Florida, Fourth District.
April 17, 1996.
Billie Tarnove, Fort Lauderdale, for appellant.
Alan M. Medof of Alan M. Medof, P.A., Fort Lauderdale, for Appellee-Theodore Lehrer, M.D.
*865 GROSS, Judge.
The issue in this case is whether the constitutional homestead exemption can be waived by a provision in a settlement agreement adopted by a divorce final judgment.
In October, 1992 appellant and his wife were in the midst of divorce proceedings. They entered into a property settlement agreement which was later incorporated into a final judgment dissolving their marriage. The agreement called for the sale of the marital residence. A provision of the settlement agreement provided:
D. Judgments, Liens and Lawsuits Satisfied: The Husband shall satisfy any and all outstanding judgments pending against him from his share of the proceeds received from the sale of the marital property. Husband shall further be responsible for any and all potential claims, lawsuits or judgments pending against him individually or in connection with his profession.
At the time of the final judgment, appellee held two outstanding, recorded final judgments against the husband totalling $55,738.83 in principal. There were no other existing or imminent judgments against the husband.
While the marital residence was under contract for sale, appellant and his wife resolved a post-dissolution dispute by an agreement dated October 3, 1993. This document reconfirmed the provisions in the first settlement agreement regarding the proceeds from the sale of the marital home:

SALE OF FORMER MARITAL RESIDENCE:
(A) That the former marital residence located at 336 Coral Way, Fort Lauderdale, Florida, is presently the subject of a contract for sale and the closing shall be held in the near future. At the time of the closing, the net proceeds shall be distributed between the parties. The determination of net proceeds shall be in accordance with the prior Marital Settlement Agreement and Addendum thereto entered into between the parties and each party shall receive the credits, and be responsible for the obligations as delineated in the original Marital Settlement Agreement and Addendum. (Emphasis supplied).
At the closing on the sale of the marital home, the husband did not take steps to pay off appellee's judgments. Instead, he entered into an escrow agreement with the buyers' attorney. Pursuant to the agreement, $77,199.76 from appellant's share of the sale proceeds was placed into an escrow account held by the buyers' attorney and appellant had six months to obtain a court order declaring that the funds were protected by homestead from appellee's judgments. If appellant failed to obtain such an order, then the agreement authorized the buyers' attorney to release the funds to appellee.
Appellee sought to garnish the funds held in escrow by the buyers' attorney. Appellant moved to dissolve the writ of garnishment, contending that the homestead provision of the Florida Constitution[1] shielded the proceeds of the sale from garnishment. After an evidentiary hearing, the trial court denied appellant's motion to dissolve the writ and entered a final judgment in garnishment ordering that the escrowed funds be paid to appellee against the outstanding judgments.
Based on the evidence at the hearing, the trial court could properly have concluded that appellant failed to carry the burden of proof required by Orange Brevard Plumbing: that he had an "abiding good faith intention prior to and at the time of the sale of the homestead to reinvest the proceeds thereof in another homestead within a reasonable *866 time." 137 So.2d at 206. The trial court need not have reached the factual, subjective question of appellant's intent[2], because appellant's conduct in the divorce proceeding amounted to a waiver of homestead as a matter of law.
Historically, the purpose of the homestead provision was to protect the family, to "provide it a refuge from the stresses and strains of misfortune." Collins v. Collins, 150 Fla. 374, 7 So.2d 443, 444 (1942); City Nat'l Bank v. Tescher, 578 So.2d 701, 702 (Fla.1991). The 1985 amendment to article X, section 4 extended the protection to a "natural person," without regard to status as head of a family. Cain v. Cain, 549 So.2d 1161, 1163 (Fla. 4th DCA 1989). The homestead exemption is liberally construed for the benefit of those whom it was designed to protect. Id. In light of these general principles, appellant relies on Sherbill v. Miller Manufacturing Co., Inc., 89 So.2d 28 (Fla. 1956), for the proposition that the homestead exemption cannot be waived.
Appellant has read Sherbill too broadly. The waiver in Sherbill arose as part of a debtor-creditor transaction. The debtors signed a note which waived the "benefit of the homestead exemption" as to the debt created by the note. The debtor defaulted. The creditor sued on the note, obtained a judgment and sought to levy on the debtors' homestead property. The Supreme Court held that the waiver contained in the note was contrary to public policy. Id. at 31. As authority, Sherbill cited Carter's Administrator v. Carter, 20 Fla. 558 (1884), which also invalidated a waiver of homestead exemption contained in a note. Expressing the nineteenth century view of a paternalistic, social safety net, Carter's Administrator makes it clear that the type of waiver offensive to public policy is one given by a debtor as part of the consideration for a loan:
The object of exemption laws is to protect people of limited means and their families in the enjoyment of so much property as may be necessary to prevent absolute pauperism and want, and against the consequence of ill advised promises which their lack of judgment and discretion may have led them to make, or which they may have been induced to enter into by the persuasion of others ... [I]t would be mischievous to encourage such agreement in which by the mere scratch of a pen the whole policy of the exemption laws would become nugatory......few men would mortgage their household goods and their children's clothes to a hard creditor with the inevitable result brought vividly to their understanding, but many thoughtless and improvident people might be induced to obtain credit by merely "waiving the benefit of exemption," and thus placing the last blanket and bed and their own and the children's clothing at the mercy of a hard creditor, if an agreement like this should be sustained.
Id. at 569-70.
Unlike the impermissible waiver in Sherbill, the provisions of the settlement agreement in this case did not arise as part of a transaction with a creditor. The public policy values implemented by Sherbill and Carter's Administrator were not offended by appellant's agreement with his wife to satisfy judgments from his share of the proceeds from the sale of the marital home. In negotiating the agreements, appellant was represented by counsel. The husband's promise was given not to benefit a "hard creditor," but to appellant's wife, a person entitled to the protection of the homestead provision as to the marital home. Cf. Daniels v. Katz, 237 So.2d 58 (Fla. 3d DCA 1970) (where the court held that the homestead provision precluded former husband from encumbering the former marital home without the consent of former wife, who resided on the property). In the context of the divorce, the husband's pledge served the purpose of resolving the financial matters of the marital relationship. The divorce final judgment incorporated the settlement agreement, making appellant's promise enforceable by the wife in that proceeding. Once appellant's promise acquired such legal significance it was akin to those *867 written, informed homestead waivers which have been approved by the courts. See Davis v. Amerifirst Bank, 578 So.2d 318, 319 (Fla. 3d DCA 1991), rev. den. 584 So.2d 997 (Fla.1991); City Nat'l Bank v. Tescher, 578 So.2d at 703; § 732.702(1), Fla.Stat. (1995); cf. Monks v. Smith, 609 So.2d 740, 743 (Fla. 1st DCA 1992) (where the court held no homestead waiver, finding nothing in person's conduct to suggest a disclaimer of the "right to take the property free from creditors' claims."). To allow appellant in this case to disavow the clear language of his agreement incorporated in the divorce decree is to permit the homestead exemption to be an instrument of dishonesty.
The final judgment in garnishment is affirmed.
STEVENSON, J., concurs.
STONE, J., concurs specially with opinion.
STONE, Judge, concurring specially.
I concur in affirming but would not address whether Appellant's execution of the settlement agreement was a waiver of homestead rights. Rather, it is sufficient that the trial court had discretion to conclude that Appellant failed to demonstrate an abiding good faith intention, at the time of sale, to reinvest the proceeds in a new homestead.
NOTES
[1] Article X, section 4 of the Florida Constitution provides:

(a) There shall be exempt from forced sale under process of any court, thereon ... the following property owned by a natural person:
(1) a homestead ... if located within a municipality, to the extent of one-half acre of contiguous land, upon which the exemption shall be limited to the residence of the owner of his family.
In Orange Brevard Plumbing & Heating Co. v. La Croix, 137 So.2d 201, 206 (Fla. 1962), the Supreme Court extended the homestead exemption to the proceeds of a voluntary sale of a homestead, provided that the seller establishes certain facts regarding reinvestment of the proceeds in another homestead.
[2] Appellant maintained in the hearing below that he always intended to apply all of the proceeds of the sale to a new home, notwithstanding the language in the settlement agreements to the contrary.