William Frederick **COLWELL**, and Ruby Colwell, Appellants,

v.

**ROYAL INTERNATIONAL TRADING CORPORATION, Appellee.**

**No. 97–8500–CIV–GOLD.**
**Bankruptcy No. 9635148–BKC–SHF.**

United States District Court,
S.D. Florida,
Miami Division.

Oct. 14, 1998.

John P. Tynan, Jupiter, FL, for Appellants.

Michael Bakst, West Palm Beach, FL, for Appellee.

### CORRECTED ORDER REVERSING BANKRUPTCY COURT'S ORDER SUSTAINING OBJECTION TO EXEMPTIONS

GOLD, District Judge.

THIS CAUSE comes before the Court upon an appeal from the Order Sustaining Objections to Exemptions, entered April 25, 1997 by the United States Bankruptcy Court for the Southern District of Florida.[1] Appellants, William Frederick Colwell and Ruby Colwell ("Appellants") sought to exempt real property from creditors' claims filed in bank-

---

**1.** The "[g]rant or denial of a claimed exemption is a final appealable order from a bankruptcy proceeding." *In re Brayshaw,* 912 F.2d 1255, 1256 (10th Cir.1990) (quoting *In re Sumy,* 777 F.2d 921, 923 (4th Cir.1985)).

ruptcy proceedings pursuant to Article X, § 4 of the Florida Constitution. Appellee, Royal International Trading Corporation ("Appellee"), objected to the exemptions on the ground that as a married couple, Appellants were entitled to a homestead exemption on only one of the two residential properties owned individually by Appellants. The Bankruptcy Court sustained the objection.

Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 158(a). This Court has carefully reviewed the record on this appeal, the parties' briefs, the Order entered by the Bankruptcy Court, and the relevant law. Although this appeal raises a difficult question, an evaluation of the factors for determining the entitlement to homestead exemptions on real property under Florida law reveals that the Bankruptcy Court's Order Sustaining Objection to Exemptions should be reversed.

## I. Factual and Procedural Background

The facts in this case are uncontroverted. On December 12, 1996, Appellants jointly petitioned the U.S. Bankruptcy Court for the Southern District of Florida, seeking relief under Chapter 7 of the Bankruptcy Code (the "Code"). It is undisputed that at the time of filing their petition, Appellants were legally married, but had been maintaining separate residences for the preceding three and a half years.[2] William Colwell resided at 124 Sea Steppes Court in Jupiter, Florida. Ruby Colwell resided at 6267 Garrett Street in Palm Beach Gardens, Florida. The respective residences were deeded to Appellants in their individual capacities. The deeds were not held jointly, nor by the entireties.

Because Appellants maintained these separate residences, on which Florida taxing authorities afforded each Appellant a homestead exemption, Appellants sought to exempt their respective properties in the bankruptcy proceeding pursuant to Article X, § 4 of the Florida Constitution. Appellee objected to the dual exemptions. Appellee

argued that since Appellants were still married, only one property could be exempted from bankruptcy creditors. Appellants had to choose which property to exempt. The Bankruptcy Court, finding no case law to support dual homestead exemptions for married individuals residing on two distinct, noncontiguous parcels of property, sustained the objections. See In re Colwell, 208 B.R. 85 (Bankr.S.D.Fla.1997).

Appellees have appealed the order of the Bankruptcy Court. They urge that Article X, § 4 of the Florida Constitution provides individual homestead exemptions for a husband and a wife who are separated and residing in individually owned homesteads. After a thorough analysis of Florida law and policy, this Court agrees.

## II. Standard of Review

■ Conclusions of law issued by bankruptcy courts are reviewed de novo. See In re Sublett, 895 F.2d 1381, 1383 (11th Cir. 1990). De novo review requires the Court to make a judgment "independent of the bankruptcy court's, without deference to that court's analysis and conclusions." Moody v. Amoco Oil Co., 734 F.2d 1200, 1210 (7th Cir.1984). Where an issue raises a mixed question of law and fact, District Courts are instructed to review a bankruptcy court's determination de novo. See In re Marks, 131 B.R. 220, 222 (S.D.Fla.1991), aff'd, 976 F.2d 743 (11th Cir.1992).

■ District Courts must give considerable deference to a bankruptcy court's findings of fact, and will not overturn a bankruptcy court's factual findings unless it determines that those findings are clearly erroneous. See In re Chase & Sanborn Corp., 904 F.2d 588, 593 (11th Cir.1990); In re Pepenella, 103 B.R. 299, 300 (M.D.Fla. 1988).[3] A finding of fact is clearly erroneous when the record lacks substantial evidence to support it such that an appellate

---

2. Appellants obtained a Final Decree of Dissolution on January 24, 1997, one month after they filed their bankruptcy petition.

3. Under Bankruptcy Rule 8013, the District Courts are instructed that "findings of fact shall

not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of witnesses." Fed.R.Bankr.P. 8013.

court's review of the evidence results in a firm conviction that a mistake has been made. *See Blohm v. Commissioner of Internal Revenue*, 994 F.2d 1542, 1548 (11th Cir.1993).

### III. Discussion and Analysis

■ This appeal raises the issue whether a married couple, living separately for an extended period of time in property deeded in their individual capacities, and on which Florida has conferred individual homestead exemptions, can seek to avoid a creditor's claims in bankruptcy proceedings. No Florida court has addressed this specific issue. Although it may appear to be a question of first impression, some precedent exists to support the conclusion that Appellants are entitled to both homestead exemptions.

As a threshold matter, courts must not lose sight of the overriding policy of the Code, which is to release the debtor from the burdens of his indebtedness and provide him with a new opportunity in life, free from the pressures of pre-existing debt. *See Perez v. Campbell*, 402 U.S. 637, 648, 91 S.Ct. 1704, 1710–11, 29 L.Ed.2d 233 (1971). Because the purpose behind the Code is to provide a debtor with a fresh start, there is a presumption that the debt is dischargeable. *See In re Armento*, 127 B.R. 486, 489 (Bankr. S.D.Fla.1991).

■ A case commenced under Title 7 of the Code creates an estate comprised of all the property in which the debtor has a legal or equitable interest as of the date of filing the bankruptcy petition. *See* 11 U.S.C. § 541(a). However, an individual may exclude property from the estate by claiming exemptions authorized by 11 U.S.C. § 522. *See In re Allen*, 203 B.R. 786, 791 (Bankr. M.D.Fla.1996). States are permitted to opt out of the federal exemptions enumerated in § 522(d), and may limit residents to those exemptions provided under state law. 11 U.S.C. § 522(b). Florida has opted out of the federal scheme, making a debtor's exemptions subject to state law. *See* § 222.20, Fla.Stat.; *In re Hall*, 752 F.2d 582, 584 (11th Cir.1985); *In re Kelley*, 21 B.R. 375, 376 (Bankr.M.D.Fla.1982). Thus, under Florida law, Florida residents who file for bankrupt-

cy may avail themselves of those exemptions permitted by § 220.20 of the Florida Statutes and Article X, § 4 of the Florida Constitution. Only if an exemption is not covered within these two sources, may a debtor utilize the federal exemptions contained in 11 U.S.C. § 522. *See In re Wilbur*, 206 B.R. 1002, 1006 (Bankr.M.D.Fla.1997). A party objecting to an exemption provided under Florida law must prove, by a preponderance of the evidence, that the debtor is not entitled to the claimed exemption. *Id.*

### A. Florida's Constitutional Homestead Exemption

Section 522(b)(2)(A) permits a debtor to except from his bankrupt estate property classified as exempt under either federal or state law on the date of filing the petition. Under the current Code, the estate is created from all property in which the debtor has an interest, and the debtor is then able to claim as exempt property designated as such under local law. *See In re Snape*, 172 B.R. 361, 363 (Bankr.M.D.Fla.1994) citing *Hanover Bank v. Moyses*, 186 U.S. 181, 189–90, 22 S.Ct. 857, 861, 46 L.Ed. 1113 (1902).

■ One of Florida's strongest exemptions is that which protects homestead property. *See Sherbill v. Miller Mfg. Co.*, 89 So.2d 28, 31 (Fla.1956) ("no policy of this State is more strongly expressed in the constitution, laws and decisions of this State than the policy of our exemption laws"); *see also In re Meola*, 158 B.R. 881, 882 (Bankr. S.D.Fla.1993) ("A homestead exemption is one of the exemptions available under Florida law and has long been embodied in the organic law of this state."); *Olesky v. Nicholas*, 82 So.2d 510, 513 (Fla.1955) ("We find no difficulty in holding that the Florida constitutional exemption of homesteads protects the homestead against every type of claim and judgment except those specifically mentioned in the constitutional provision."). The homestead exemption serves a compelling public purpose of promoting the stability and welfare of the state by securing to the householder a home, so that the householder may live beyond the reach of financial misfortune. *See Public Health Trust of Dade County v. Lopez*, 531 So.2d 946, 948 (Fla.1988). In fact,

the underlying public policy of the exemption is so compelling that the right has been held to override even criminal statutes. *See, e .g., Butterworth v. Caggiano,* 605 So.2d 56 (Fla. 1992).

The Florida Constitution provides that:

There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase improvement or repair thereto, or obligations contracted for house, field or other labor performed on the realty, the following property owned by a natural person:

(1) a homestead, if located outside a municipality, to the extent of the one hundred and sixty acres of contiguous land and improvement thereon, ... or if located within a municipality, to the extent of one-half acre of contiguous land, upon which the exemption shall be limited to the residence of the owner or his family[.]

Art. X, § 4, Fla. Const.

 The protection granted to homesteads is a constitutionally guaranteed right, which must be liberally construed to effectuate its remedial purpose. *See In re Lazin,* 221 B.R. 982, 988–89 (Bankr.M.D.Fla.1998). In Florida, homestead rights are construed in favor of exemption. *See Butterworth,* 605 So.2d at 59. However, claims may not be shielded from creditors if they fall into three enumerated exceptions: (1) the payment of taxes and assessments thereon; (2) obligations contracted for the purchase, improvement or repair thereof; or (3) obligations contracted for house, field or other labor performed on the realty. *See id.* at 60. "These exceptions are unqualified." *Id.* None of these exceptions are implicated in this case.

 A debtor loses his constitutional exemption only if one of the three specific and expressly stated exemptions is present, or if the debtor uses his homestead as an instrument of fraud. *See In re Wilbur,* 206 B.R. at 1008. To overcome the inference that the exemption applies in the absence of the express constitutional exceptions in Arti-

cle X, § 4, a creditor must show the debtor used the exemption with the intent to hinder, delay or defraud creditors. *See id.; see also In re Mackey,* 158 B.R. 509, 512 (Bankr. M.D.Fla.1993). The important indicators of fraudulent intent are the timing and concealment of non-exempt assets which are subsequently converted into exempt property. *See In re Mackey,* 158 B.R. at 512.

 In Florida, a homestead is established when there is "actual intent to live permanently in a place, coupled with actual use and occupancy." *See In re .Brown,* 165 B.R. 512, 514 (Bankr.M.D.Fla.1994). The intent to establish a homestead is evidenced by a debtor's specific acts toward creating a permanent abode which are not contradicted by subsequent behavior of the debtor. *See id.* (citing *Semple v. Semple,* 82 Fla. 138, 89 So. 638 (1921)); *see also Hillsborough Investment Co. v. Wilcox,* 152 Fla. 889, 13 So.2d 448, 451 (Fla.1943) (it is well-settled that homestead status is established by the actual intention to live permanently in a place coupled with actual use and occupancy). All that is required is that the property owner reside on the property and in good faith make the same his permanent home. *See Judd v. Schooley,* 158 So.2d 514, 516 (Fla. 1963).

 Property established as a homestead retains its exempt status until it is abandoned. *See In re Mackey,* 158 B.R. at 513. A homestead has been abandoned when it is no longer a "bona fide home and place of permanent abode." *In re McCarthy,* 13 B.R. 389, 390 (Bankr.M.D.Fla.1981).

### B. Conflicting Florida Statutes

While recognizing the strength behind the constitutional homestead exemption, the Court is aware of conflict created by Florida statutes. However, these statutes do not vary the protective scheme of homestead exemption rights; rather, they expand it. Such further protection can be found within the family and probate law contexts.

For instance, § 61.075 of the Florida Statutes provides for the equitable distribution of marital assets and liabilities in dissolution of marriage proceedings. A "marital asset" in-

cludes all "assets acquired and liabilities incurred during the marriage, individually by either spouse or jointly by them." § 61.075(5)(a)(1), Fla.Stat. Thus, absent an effective agreement to the contrary, Appellants' respective properties would be included among the marital assets equitably distributed in their dissolution proceedings.

Additionally, Florida provides surviving spouses the statutory right to elect a share of the deceased spouse's estate, unless the elective right has been validly waived or the marriage has been judicially dissolved. *See* §§ 732.102, 732.201, Fla.Stat.; *see also Pawley v. Pawley*, 46 So.2d 464, 467 (Fla.1950) (the right of the surviving spouse to an elective share "stands or falls as a result of a decree which denies or grants a divorce"). Thus, even though Appellants lived separately, and claimed their marriage was irretrievably broken, absent a divorce decree, if one spouse had died while they were still legally married to each other, the surviving spouse would be entitled to an elective share, which would include the homesteaded property of the decedent spouse.

Although these statutes appear to support Appellee's argument that Appellants are not entitled to choose when to avail themselves of Florida's protective shield from creditors' claims, it is the source of the right which denotes its preemptive character. The exemptions created under the family, tax, and probate laws are creatures of the legislature, "with no constitutional protection, and therefore, may be subject to other exceptions," enacted by the will of legislators. *In re Lazin*, 221 B.R. at 989. On the other hand, the homestead exemption against forced sale is a right provided by the Florida Constitution. This right can only be abrogated by amending the Florida Constitution to restrict the right to homestead exemption. *See In re Clements*, 194 B.R. 923, 925 (Bankr.M.D.Fla. 1996). Any changes in the existing scheme could only be instituted upon a favorable vote of the citizens of Florida. *See id.; see also In re Dean*, 177 B.R. 727, 730 (Bankr. S.D.Fla.1995) (the "public policy underlying the homestead exemption from forced sale is clearly more compelling than the public policy underlying the tax exemption. The home-

stead exemption should ensure more protection from forced sale than it receives from the tax exemption, not less . . . .").

### C. Appellants Have Established Entitlement to Separate Homestead Exemptions

■ It is true that, absent a divorce decree obtained through judicial process, Florida does not recognize marital separations. *See Reopelle v. Reopelle*, 587 So.2d 508, 510 (Fla. 5th DCA 1991). It is also true that at the time Appellants filed their joint petition with the Bankruptcy Court, they were still legally married, and could avail themselves of the privileges and protections provided to married individuals. However, the Florida Supreme Court has long held that a wife may acquire a domicile separate from her husband. *See Merritt v. Merritt*, 55 So.2d 735, 737 (Fla.1951).

In this case, Appellants intended to establish a homestead, and did so by actually using and occupying their respective properties. It is undisputed that, since 1993, Appellants have maintained separate residences on exclusively owned properties. Appellants are individually obligated to pay the taxes and maintenance of their respective properties. Moreover, Appellants have been afforded the right to claim homestead exemptions by the Florida taxing authorities. Although not definitive, it does provide some evidence of creating a permanent abode. *See In re Brown*, 165 B.R. at 514. Filing joint tax returns with the United States Internal Revenue Service, does not indicate that Appellants' separate living arrangements were used as an instrument for defrauding creditors.

By establishing their entitlement to homestead exemptions, the burden was on Appellee to show, by a preponderance of the evidence, that the homestead exemption was unavailable in the bankruptcy proceeding. Appellee was required to come forward with evidence that showed either that its claim fell within one of the enumerated exceptions in Article X, § 4 of the Florida Constitution, or that Appellants maintained separate domiciles in anticipation of defrauding creditors. There is no evidence that Appellants imple-

mented their living arrangements for the purpose of defrauding creditors. Because the presumption favors the exemption, Appellee was required to rebut this presumption with some evidence. *See Butterworth*, 605 So.2d at 59. Having failed to put forth any evidence to overcome the presumption, Appellee has not met its burden. Analyzing Florida's public policy behind the homestead exemption and granting it liberal construction lead to the inescapable conclusion that Appellants' properties are exempt as homesteads.

## IV. Conclusion

 Florida's homestead law is based on public policy considerations, designed "to promote the stability and welfare of the state by encouraging property ownership and independence on the part of the citizen." *In re Kelley*, 21 B.R. at 376. The constitutional homestead exemption was designed for honest debtors. *See Slatcoff v. Dezen*, 76 So.2d 792, 793 (Fla.1954). It is generally assumed that a debtor is honest unless and until the contrary is proven. *See id.*

Moreover, the public policy of the Bankruptcy Code is to balance the interests of debtors and creditors. Specifically, the Code balances the debtor's "fresh start" against the creditor's effort to be paid its claim. *See Lines v. Frederick*, 400 U.S. 18, 19, 91 S.Ct. 113, 114, 27 L.Ed.2d 124 (1970). The proposition urged by Appellee, that allowing Appellants' claimed exemptions prevents creditors from obtaining full satisfaction of their claims, is not convincing in light of the "fresh start" contemplated by the Code, and the "liberal beneficent spirit" of Florida's homestead exemption. *See In re Meola*, 158 B.R. at 882. Appellee's argument basically challenges the economic soundness of the exemption laws. However, "[t]his argument obviously should be addressed to the people of the State of Florida who certainly could restrict the claim of exemptions by amending Article X, § 4 of their Constitution and should not be addressed to this Court which is not in a position, of course, to do so." *In re Snape*, 172 B.R. at 364.

The Bankruptcy Court felt constrained to disallow Appellants' dual homestead exemp-

tions. Although this Court has reached a different conclusion, it cannot be said that the Bankruptcy Court was incorrect. However, in the absence of clear guidance from Florida courts construing their laws and rights with regard to homestead exemptions under the circumstances involved in this case, the Court believes it wise to grant the exemption until instructed otherwise by the Florida Legislature.

Based on the foregoing, it is

**ORDERED AND ADJUDGED** that the Order Sustaining Objections to Exemptions, entered April 25, 1997 by the United States Bankruptcy Court for the Southern District of Florida is REVERSED. This case is remanded to the Bankruptcy Court for further proceedings consistent with this Order.