738 So.2d 522 (1999)
Phyllis M. LAW, Appellant,
v.
Robert R. LAW, Barbara Law, Kimberly Pero and Teresa Fitzsimmons, Appellees.
No. 98-2416.
District Court of Appeal of Florida, Fourth District.
August 18, 1999.
*523 Christopher B. Knox and William P. Doyle, Hollywood, for appellant.
Linda A. Conahan and Ann M. Burke of English, McCaughan & O'Bryan, P.A., Fort Lauderdale, for appellees.
KLEIN, J.
Appellant is the former wife of appellee Robert Law and has a judgment against him for support payments. The issue presented by this case is whether, when Robert inherited his mother's home, it became his homestead and therefore exempt from execution. Robert and his present wife Barbara own another home as tenants by entirety, but they had become separated and Robert was living in his mother's home at the time of her death. We affirm the trial court's finding that the inherited home was Robert's homestead.
In May, 1995, Robert and his present wife, Barbara, became separated. Robert moved out of the Hollywood home, which he and Barbara owned as tenants by entirety, and moved into the home owned by his mother in Davie. He took with him his minor great-grandson, for whom he is the legal guardian. Robert received his and his ward's mail at the Davie property from the time they moved in. In February, 1997, Robert's mother became very ill. Robert then asked his wife, Barbara, to help him take care of his mother, and Barbara moved into the Davie home. She continued to live there with Robert until the Davie home was sold.
After Robert's mother became ill, it was decided that the Davie home should be sold in order to pay for medical care for Robert's mother. Robert's mother gave him a power of attorney, which he used to sign a contract for sale to the appellees Pero and Fitzsimmons. Robert's mother died in March, 1997, and a few weeks later, in April, Robert filed a designation of homestead claiming the Davie home as exempt property. He then filed this declaratory action seeking to declare that home to be his homestead and therefore exempt from liens. On April 22 an order was entered by the probate court determining *524 that the Davie home had passed to Robert as his mother's only heir. The sale to Pero and Fitzsimmons closed on April 28.
The trial court found that the Davie home was Robert's homestead and was thus exempt from Phyllis' judgment, and Phyllis appeals, arguing that (1) the Davie home could not be homestead because the Hollywood home was Robert's homestead, and (2) that Robert's dealings constituted fraud.
The homestead exemption in Article 10, section 4 of the Florida Constitution is "limited to the residence of the owner" or the owner's family. It requires "actual occupancy of a home with intention to remain there." In re Van Meter's Estate, 214 So.2d 639, 643 (Fla. 2d DCA 1968)(quoting Croker v. Croker, 51 F.2d 11 (5th Cir.1931)).
One argument advanced by Phyllis is that the fact that Robert had contracted to sell the Davie property prior to his mother's death precludes a finding that he had an intent to make the Davie property his residence after his mother died. A contract for sale, however, does not as a matter of law end homestead status. In re Estate of Skuro, 467 So.2d 1098 (Fla. 4th DCA 1985) and cases cited. See also Orange Brevard Plumbing and Heating Co. v. La Croix, 137 So.2d 201 (Fla. 1962)(even the sale of a homestead does not necessarily destroy its status, because the proceeds may be utilized to purchase a new homestead without losing the exemption). The trial court found as a matter of fact that Robert was permanently residing in the Davie home prior to his mother's death and continuously thereafter until the property was sold. The agreement to sell, does not, as a matter of law, preclude Robert from having the homestead exemption.
The more difficult question is presented by the fact that Robert and his present wife have at all times owned a home in Hollywood for which they claimed a homestead tax exemption. Phyllis argues that the Davie home could not be homestead because the Hollywood home was, as a matter of law, Robert's homestead, and a person cannot have two homesteads.
In Myers v. Lehrer, 671 So.2d 864, 866 (Fla. 4th DCA 1996), we expressed the general principles which should guide us:
Historically, the purpose of the homestead provision was to protect the family, to "provide it a refuge from the stresses and strains of misfortune." Collins v. Collins, 150 Fla. 374, 7 So.2d 443, 444 (1942); City Nat'l Bank v. Tescher, 578 So.2d 701, 702 (Fla.1991). The 1985 amendment to article X, section 4 extended the protection to a "natural person," without regard to status as head of a family. Cain v. Cain, 549 So.2d 1161, 1163 (Fla. 4th DCA 1989). The homestead exemption is liberally construed for the benefit of those whom it was designed to protect. Id.

With the exception of a bankruptcy case, the issue presented is one of first impression. In Colwell v. Royal International Trading Corp., 226 B.R. 714 (S.D.Fla. 1998), the bankruptcy court held that a husband and wife who had been living separately for more than three years could not each claim a homestead exemption under the Florida Constitution, but on appeal, the district court reversed. Although the facts are not identical, Colwell is significant because it recognizes that married people who live separately can each have a homestead exemption. In Colwell, at the time they filed their bankruptcy petition, the husband and wife were married, but had been separated for over three years and living in residences owned individually by each. Each had obtained a homestead exemption for tax purposes. Relying on the same principles this court relied on in Myers, the district court judge reversed the bankruptcy court and allowed homestead exemptions to each spouse.
*525 One of the things we noted in Myers was that the 1985 amendment to our homestead exemption in the constitution extended the exemption to a "natural person" regardless of whether the person was the head of a family. Following that, our supreme court said in Public Health Trust of Dade County v. Lopez, 531 So.2d 946, 948 (Fla.1988):
As a matter of public policy, the purpose of the homestead exemption is to promote the stability and welfare of the state by securing to the householder a home, so that the homeowner and his or her heirs may live beyond the reach of financial misfortune and the demands of creditors who have given credit under such law.
We see nothing inconsistent with our public policy if we extend a homestead exemption to each of two people who are married, but legitimately live apart in separate residences, if they otherwise meet the requirements of the exemption. When we say "legitimately" we mean that there is no "fraudulent or otherwise egregious act" by the beneficiary of the homestead exemption. Isaacson v. Isaacson, 504 So.2d 1309 (Fla. 1st DCA 1987); see also Radin v. Radin, 593 So.2d 1231 (Fla. 3d DCA 1992). In the present case there was no evidence that Robert and Barbara's separation in May, 1995, was for anything other than legitimate reasons, and ample evidence to support the trial court's finding that he was residing in the Davie home when he inherited it, with the intention to remain there until it was sold.[1]
We agree with Phyllis that Robert cannot have two homesteads, and that a husband and wife in an intact marriage cannot have two homesteads. Under the facts in this case, however, we see no reason why Robert's homestead could not be different from the homestead of his wife, where their separation was bonafide, and it was Robert's intent to reside in the Davie home. We therefore affirm.
GROSS and HAZOURI, JJ., concur.
NOTES
[1] Phyllis also argues that there was fraud because in connection with the power of attorney Robert either had his mother execute a quit claim deed or signed his mother's name. Whether Robert's intent was fraudulent was an issue of fact, and there was evidence to support the trial court's rejection of this theory.