EMAS, J.
This is an appeal from an order and final judgment which determined that proceeds from the sale of a marital home, pursuant to the terms of a marital settlement agreement, were subject to homestead protection under the Florida Constitution. We affirm.

FACTS AND BACKGROUND

Stuart Kerzner (“Stuart”) and Dana Kerzner (“Dana”) were married in 2002 in Miami-Dade County. Several years later, Stuart filed a petition for dissolution of the marriage. Stuart and Dana negotiated and executed a marital settlement agreement and addendum (“MSA”), which described how their assets and liabilities would be divided. The primary asset of the marriage was the marital home; they agreed to sell the home and use the proceeds to pay various debts of each person. The MSA provided in pertinent part:
The parties agree that any lien or encumbrances on the marital home not specifically listed in the parties’ Marital Settlement Agreement or Addendums thereto as liens or encumbrances to be paid shall be the sole responsibility of the Husband and shall be paid from his share of the proceeds. This shall include, but not be limited to, lien(s) from the Husband’s attorney and any loans taken by the Husband except those listed in the Marital Settlement Agreement and Addendums thereto.
The trial court entered an Agreed Final Judgment of Dissolution of Marriage, approving and incorporating the MSA. A purchaser for the home was located and Tri-County Title Company was engaged to ensure the purchaser received clear title. Tri-County discovered three judgments totaling $284,715.50 against Stuart for unpaid child support owed to his first former wife, Rina Kerzner (“Rina”).
Upon discovering that Stuart and his current ex-wife were selling their marital home, Rina intervened in this action to make a claim against Stuart’s proceeds from the sale of the marital home. Rina contended that the terms of the MSA between Stuart and Dana established that Stuart did not have a good faith intent to reinvest the proceeds into a new homestead property and constituted a waiver of Stuart’s constitutional homestead protection.
To allow the sale to be completed, Stuart, Rina and Dana entered into an agreement releasing the marital home from the outstanding judgments, allowing the judgments to attach to Stuart’s share of the sales proceeds, which would be es-crowed pending a determination by the trial court whether, under the MSA, Rina’s judgments could be satisfied from Stuart’s share of the proceeds. The lower court ratified this agreement, the property sold on June 14, 2010, and Stuart’s share— $228,682.96 — was held in escrow.
The trial court thereafter conducted a hearing, took testimony, received memo-randa of law, and determined that the proceeds were protected from creditors by the homestead clause of the Florida Constitution. The court further determined that the terms of the MSA did not constitute a waiver of the homestead protection afforded under the Florida Constitution. Finally, the trial court determined, based upon Stuart’s testimony (and the testimony of Stuart’s realtor)[1] that Stuart intend *216 ed to use his share of the proceeds from the sale of the marital home to buy a new home. The court entered an order and judgment authorizing the release of the escrowed funds to Stuart, and this appeal followed.

ANALYSIS AND DISCUSSION

The interpretation of a marital settlement agreement is a matter of law, which we review de novo. Pita v. Pita, 16 So.3d 1018 (Fla. 3d DCA 2009). The Florida Homestead protections are found in Article X, Section 4 of the Florida Constitution as follows:
ARTICLE X, Section 4. Homestead; exemptions.—
(a) There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field or other labor performed on the realty, the following property owned by a natural person:
(1) a homestead, if located outside a municipality, to the extent of one hundred sixty acres of contiguous land and improvements thereon, which shall not be reduced without the owner’s consent by reason of subsequent inclusion in a municipality; or if located within a municipality, to the extent of one-half acre of contiguous land, upon which the exemption shall be limited to the residence of the owner or the owner’s family;
(2) personal property to the value of one thousand dollars.
(b) These exemptions shall inure to the surviving spouse or heirs of the owner.
(c) The homestead shall not be subject to devise if the owner is survived by spouse or minor child, except the homestead may be devised to the owner’s spouse if there be no minor child. The owner of homestead real estate, joined by the spouse if married, may alienate the homestead by mortgage, sale or gift and, if married, may by deed transfer the title to an estate by the entirety with the spouse. If the owner or spouse is incompetent, the method of alienation or encumbrance shall be as provided by law.
A protected homestead may be voluntarily sold, and the funds will be protected so long as they are not commingled and are held for the sole purpose of acquiring another home within a reasonable period of time. McKean v. Warburton, 919 So.2d 341, 344 (Fla.2005); Rossano v. Britesmile, Inc., 919 So.2d 551 (Fla. 3d DCA 2005).
Stuart contended (and the trial court found) that the escrowed funds were protected by Florida’s homestead laws because at all times he intended that the funds from the sale would be used to acquire a new homestead property. Rina contended that Stuart did not possess a good faith intent to use his entire share of the sale proceeds to purchase a new home because he knowingly and voluntarily entered into the MSA with Dana, through which he agreed to satisfy “any lien and encumbrances on the marital home” not specifically listed in the MSA from the proceeds. This, Rina contends, constituted a waiver of the homestead protection.
Rina relies on Myers v. Lehrer, 671 So.2d 864 (Fla. 4th DCA 1996). In Myers, a husband and wife entered into a marital settlement agreement in which the husband agreed as follows:
Judgments, Liens and Lawsuits Satisfied: The Husband shall satisfy any and *217 all outstanding judgments pending against him from his share of the proceeds received from the sale of the marital property. Husband shall further be responsible for any and all potential claims, lawsuits, or judgments pending against him individually or in connection with his profession.
Id. at 865. (Emphasis supplied).
Because the parties in Myers specifically agreed that the husband would satisfy “any and all outstanding judgments” against him from his share of the proceeds of the sale of the marital home, the Fourth District Court of Appeal found this language to be a waiver of Florida homestead protections:
The husband’s promise was given not to benefit a ‘hard creditor,’ but to appellant’s wife, a person entitled to the protection of the homestead provision as to the marital home. In the context of the divorce, the husband’s pledge served the purpose of resolving the financial matters of the marital relationship. The divorce final judgment incorporated the settlement agreement, making appellant’s promise enforceable by the wife in that proceeding. Once appellant’s promise acquired such legal significance it was akin to those written, informed homestead waivers which have been approved by the courts.
Id. at 866-867.
The instant case is distinguishable from Myers because the language of the MSA in the instant case did not contain the same broad language that “any and all outstanding judgments pending against ” the husband would be paid from the proceeds of the sale of the marital home. Instead, the parties here agreed that any “lien or encumbrances on the marital home not specifically listed” in the parties’ MSA would be Stuart’s sole responsibility and would be paid from his share of the proceeds. There was no language in the MSA that Stuart would satisfy “all judgments pending” against him. The trial court correctly found that the judgments Rina holds against Stuart do not constitute liens or encumbrances against the homestead property. See Prieto v. Eastern Nat. Bank, 719 So.2d 1264, 1266 (Fla. 3d DCA 1998) (judgment held by general creditor not a “lien or encumbrance” on homestead property). The language of the Florida Constitution expressly provides that the homestead is exempt from forced sale under process of any court, and “no judgment, decree or execution shall be a lien thereon.”[2]
Affirmed.

. Stuart hired a realtor to assist him in purchasing a new home, and entered into a real *216 estate purchase agreement only a few months after the sale of the marital home.

. We also note that in Myers, the former wife was a party to the martial settlement agreement she sought to enforce against the former husband. By contrast, Rina is a third party attempting to enforce the terms of an MSA to which she was not a party. The terms of the MSA between Stuart and Dana could not reasonably be construed or intended to act as a promise by Stuart to pay Rina’s judgments from the proceeds of the sale of the marital home of Stuart and Dana.