482 So.2d 400 (1985)
Richard FLANNERY, Appellant,
v.
Thomas GREEN, Appellee.
No. 84-2267.
District Court of Appeal of Florida, Second District.
December 4, 1985.
Rehearing Denied February 3, 1986.
*402 E. David Tyner, Dade City, for appellant.
R. Ray Brooks, Tampa, for appellee.
PER CURIAM.
Appellant, Richard Flannery, appeals from a judgment denying his claim for homestead exemption. We affirm.
Appellant began living with Patricia Gibson in Polk County, Florida, in January of 1967. Several months later, he and Patricia moved to Kentucky, where a son was born to them in December of 1967. In 1973, appellant purchased some property in Pasco County. He placed a trailer on the property and resided there with Patricia and the child until 1977. In 1977, Patricia and the child moved out of state and the appellant remained on the Pasco County property. Appellant and Patricia were never formally married and a common law marriage between them was never established. Although there has been no judicial determination of paternity and no court order directing appellant to pay child support, it is undisputed that appellant is the child's natural father.
In March of 1982, appellee, Thomas Green, recorded a judgment against the appellant in Pasco County. Because the appellant filed an affidavit of homestead, the sheriff refused to levy on appellant's property. Appellee sued for a declaratory judgment on the basis that appellant was not entitled to homestead exemption. The trial court found that the relationship between the appellant, Patricia Gibson, and the child did not constitute a "family in fact" or a "family in law" such as would support a basis for homestead exemption. The court therefore granted relief in appellee's favor, and this appeal followed.
We hold that the trial court's finding is supported by a reasonable view of the evidence. See Modine Manufacturing Co. v. Israel, 294 So.2d 369 (Fla. 3d DCA 1974).
The homestead exemption under article X, section 4, Florida Constitution, is traditionally limited to property owned by the head of a family. Holden v. Estate of Gardner, 420 So.2d 1082 (Fla. 1982). Whether a person qualifies as head of a family is a factual determination that may be found in either of two ways: (1) a legal duty to support that arises out of a family relationship  "family in law," or (2) continued communal living by at least two individuals in such circumstances that one is regarded as being in charge  "family in fact." Holden; Brown v. Hutch, 156 So.2d 683 (Fla. 2d DCA 1963).
We first address whether the relationship under consideration could be deemed a "family in law" for purposes of homestead. Although there has been no judicial determination of paternity, it is undisputed that the appellant is the child's natural father. A father may achieve the goals of the paternity statute by acknowledging the child as his own and by voluntarily providing financial support. Kendrick v. Everheart, 390 So.2d 53 (Fla. 1980). A paternity suit is not required to establish fatherhood. See In Re Guardianship of D.A.McW, 429 So.2d 699 (Fla. 4th DCA 1983), approved, 460 So.2d 368 (Fla. 1984).
Assuming that appellant is the child's natural father and that he has a legal duty to support the child, see In Re Estate of Kionka, 113 So.2d 603 (Fla. 2d DCA 1959), it next must be determined, for purposes of granting a homestead exemption, that this duty arose out of a family relationship. Holden; Brown. Such a determination turns on whether the father has manifested substantial concern for the welfare of his child. Quilloin v. Walcott, 434 U.S. 246, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978); Kendrick. It is a factual determination to be made on a case-by-case basis, and it involves the question of whether the father has assumed significant responsibility *403 with respect to the daily supervision, education, protection, or care of the child. Quilloin.
In the case before us, the appellant had neither legal nor actual custody of his son between the time he and Patricia separated in 1977 and the time the judgment was recorded in 1982. There was testimony to indicate, however, that appellant sent Patricia $100 a month to support the child and that he paid some of the child's medical bills. Although appellant may have shown a continuing interest in his child's welfare, we cannot rule it was unreasonable for the trial court to conclude that such interest did not rise to the level of "substantial concern" in the form of significant responsibility with respect to the daily supervision, education, protection, or care of the child. See Modine; Quilloin.
We next examine whether a "family in fact" could be found for purposes of homestead. Because appellant had been living alone for approximately five years before appellee's judgment was entered against him, it appears that the relationship fails to satisfy the "continued communal living" requirement. This requirement may be excused, however, following a divorce or separation. The noncustodial parent in such cases may claim homestead if he retains primary responsibility for the support, maintenance, and welfare of the minor children. See Brodgon v. McBride, 75 So.2d 770 (Fla. 1954).
Whether the property owner retains primary responsibility after a physical separation is a factual issue. The key factors are financial support and actual supervision and control over the other family members. Financial support, by itself, is not determinative. Blasendorf v. Credithrift of America, 29 B.R. 559 (M.D.Fla. 1983); In The Matter of Hersch, 23 B.R. 42 (M.D.Fla. 1982). There must be an established and continual personal authority and responsibility upon one as the head of the family for the welfare of others who in fact recognize and reserve a family relationship to him as head of the family. Blasendorf. The head of the household actively participates in the routine decisions regarding the children's upbringing. Hersch.
Although appellant contributed to his child's support and the child visited appellant during Christmas and summer vacations, we cannot rule that it was unreasonable for the fact-finder to conclude that appellant did not regularly participate in the routine, child-rearing process. See Modine; Hersch.
Accordingly, we find that the court did not err in ruling that appellant did not qualify as head of the family for purposes of the homestead exemption. We affirm the judgment of the trial court granting declaratory relief in appellee's favor.
AFFIRMED.
GRIMES, A.C.J., and SCHOONOVER, J., concur.
OTT, J., dissents with opinion.
OTT, Judge, dissenting.
I respectfully dissent. I believe the undisputed facts establish that appellant was head of a "family in law."
The majority finds lacking one element necessary to show the existence of a "family in law" in this case  the manifestation by appellant of substantial concern for the welfare of his child. I cannot agree. The undisputed evidence establishes that father, child, and mother lived together as a family unit during the first nine years of the child's life. Following the separation, appellant sent $100 a month to Patricia Gibson as support for the child. He also paid all medical bills. Patricia Gibson testified that appellant was the sole supporter of the child. In addition to the monthly payments and medical bills, she testified that if she needed additional money for the child she would request it of appellant and "he always provided it." Appellant did this voluntarily, as there was no court order of support. Patricia Gibson's testimony was uncontroverted. There was no evidence presented of the standard of living of appellant or Patricia Gibson, or of the living *404 expenses of the child. The child spent Christmas and summer vacations with appellant. In May of 1982, the child came to live permanently with appellant.
I believe that this unrefuted evidence supports only one conclusion, that appellant has manifested substantial concern for the welfare of the child. Quillion. Hence, appellant showed that he had a legal duty to support arising out of a family relationship, a "family in law." Holden.
I would reverse the denial of appellant's homestead exemption.