941 So.2d 559 (2006)
Charles TAYLOR and Connie Taylor, Appellants,
v.
James G. MANESS and Olga Maness, Appellees.
Nos. 3D06-578, 3D06-919.
District Court of Appeal of Florida, Third District.
November 15, 2006.
*560 Robert T. Maher, Fort Myers, FL, for appellants.
Infantino & Berman and Thomas V. Infantino, Winter Park, FL; Campbell & Malafy, Marathon, FL, and John Campbell, for appellees.
Before WELLS, CORTIÑAS, and ROTHENBERG, JJ.
ROTHENBERG, Judge.
The plaintiffs, Charles Taylor and Connie Taylor ("Taylors"), appeal (1) a final order granting partial summary judgment in favor of the defendants, James G. Maness ("Mr. Maness") and Olga Maness ("Mrs. Maness")(collectively referred to as the "Manesses"), as to Counts I, III, V, VI, and VII of their amended complaint, and (2) a final order granting summary judgment in favor of Mrs. Maness as to her counterclaim, based upon disputed issues of fact relating to Mrs. Maness' intent to *561 claim a homestead interest in the real property contracted for sale by Mr. Maness to the Taylors. Because we find that there is no genuine issue as to any material fact and that the Manesses are entitled to judgment as a matter of law, we affirm.
As a result of Mr. Maness terminating a Contract for the Sale and Purchase of Real Property ("contract") that Mr. Maness and the Taylors entered into, the Taylors filed an amended complaint against the Manesses, asserting the following claims: Count Ibreach of contract for specific performance of the contract against Mr. Maness; Count IIbreach of contract for damages against Mr. Maness; Count IIIfraud in the inducement against Mr. Maness; Count IVbreach of covenant of good faith and fair dealing against Mr. Maness; Count Vnegligent misrepresentation against Mr. Maness; Count VItortious interference against Mrs. Maness; and Count VIIcivil conspiracy against the Manesses. Mrs. Maness filed a counterclaim against the Taylors seeking a declaratory judgment that she had not abandoned her homestead rights in the real property contracted for sale by Mr. Maness and the Taylors. Thereafter, Mr. Maness moved for entry of summary judgment as to Counts I and III; the Manesses moved for entry of summary judgment as to Counts IV, V, VI, and VII; and Mrs. Maness moved for entry of summary judgment as to her counterclaim. Following a hearing and upon review of the record, the trial court entered an order of summary judgment in favor of the Manesses as follows: Count I, specific performance, the trial court found that there is no genuine issue of material fact that Mrs. Maness has a homestead interest in the marital real property and, as the contract is not capable of being specifically performed, the Manesses are entitled to judgment as a matter of law; and, as to Counts III, V, VI, and VII, the trial court found that the "economic loss doctrine" barred these tort claims and dismissed them with prejudice. The trial court also granted summary judgment in favor of Mrs. Maness as to her counterclaim and declared that she had a homestead interest in the real property.
The undisputed facts, which were before the trial court, are as follows. Mr. and Mrs. Maness were married on June 14, 1986. Sometime in September 1986, Mr. Maness purchased a vacant lot located at 180 Ana Court, Marathon, Monroe County, Florida, which was titled solely in the name of "James G. Maness, as a married man" ("Marathon Property"). Between 1991 and 1994, the Manesses had a single family home built on the Marathon Property. Sometime in 1998, the Manesses moved from their marital homestead property in Miami, Florida, to the Marathon Property and, except for temporary absences, have remained there since. In August 2002, Mrs. Maness and the Manesses' minor son, Everett Maness ("Everett") moved temporarily to Martin County, Florida, in order for Everett to attend public school there. Mr. Maness remained and still remains in the Marathon Property. On or about September 25, 2002, Mr. Maness, as the seller, and the Taylors, as the purchasers, entered into a contract, whereby Mr. Maness agreed to convey the Marathon Property to the Taylors. Mrs. Maness did not execute the contract, nor was she named in the contract. Closing was to take place on or before December 2, 2002. Mrs. Maness, however, refused to execute the deed transferring the Marathon Property to the Taylors, claiming that she has a homestead interest in the Marathon Property, thereby precluding consummation of the contract.
The Taylors assert that the trial court erred by granting summary judgment in favor of the Manesses as to their claim for *562 specific performance since there are genuine issues of material fact relating to Mrs. Maness' abandonment of her homestead interest in the Marathon Property. We disagree.
Summary judgment is proper if there is no genuine issue of material fact and if the moving party is entitled to judgment as a matter of law. Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000). "Where no genuine issue of material fact is shown to exist, the only question for the appellate court is whether the summary judgment was properly granted under the law." Yardum v. Scalese, 799 So.2d 382, 383 (Fla. 4th DCA 2001)(citing Wesley Constr. Co. v. Lane, 323 So.2d 649, 650 (Fla. 3d DCA 1975)). Thus, "[a] trial court's ruling on a motion for summary judgment regarding a pure question of law is reviewed de novo." Fernandez v. Homestar at Miller Cove, Inc., 935 So.2d 547, 550 (Fla. 3d DCA 2006).
The Taylors attempt to create a genuine issue of material fact by asserting that Mrs. Maness' intent to abandon her homestead interest in the Marathon Property is a question of fact improperly decided on summary judgment. However, this dispute essentially pertains to a question of law; specifically, the extent of the homestead protection afforded by the Florida Constitution.
The homestead exemption found in Article X, section 4 of the Florida Constitution specifies, in pertinent part, that:
(a) There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field or other labor performed on the realty, the following property owned by a natural person:
(1) a homestead . . . upon which the exemption shall be limited to the residence of the owner or his family;
(c) . . . The owner of homestead real estate, joined by the spouse if married, may alienate the homestead by mortgage, sale or gift. . . .
Art. X, § 4(a)(1), (c), Fla. Const. (emphasis added).
Florida courts have consistently held that the protections afforded by "the homestead exemption in article X, section 4 must be liberally construed." Butterworth v. Caggiano, 605 So.2d 56, 58 (Fla. 1992). Florida courts' "homestead exemption jurisprudence has long been guided by a policy favoring the liberal construction of the exemption: `Organic and statutory provisions relating to homestead exemptions should be liberally construed in the interest of the family home.'" Havoco of Am., Ltd. v. Hill, 790 So.2d 1018, 1021 (Fla.2001)(quoting Milton v. Milton, 63 Fla. 533, 58 So. 718, 719 (1912)). "The homestead exemption is liberally construed for the benefit of those whom it was designed to protect." Law v. Law, 738 So.2d 522, 524 (Fla. 4th DCA 1999).
The plain import of article X, section 4, subsection (a) is to prevent from forced sale under process of any court the homestead property owned by a natural person, except in three specific exceptions. This homestead exemption is "limited to the residence of the owner or the owner's family." Law, 738 So.2d at 524. Therefore, if the Marathon Property is the homestead residence of Mr. Maness or his family, the protections of the homestead exemption apply and the contract in this case is incapable of being specifically performed as the court cannot force the sale of the homestead by a decree of specific performance.[1]
*563 In this case, there is no question that Mr. Maness is the title owner of the Marathon Property. There is also no dispute that Mr. Maness has permanently resided in the Marathon Property since 1998 and intends to remain there indefinitely. Thus, we conclude that the Marathon Property constitutes Mr. Maness' homestead and consequently, the homestead of his family as well. The Taylors are correct in their argument that an intact marriage can only have one homestead. See Law, 738 So.2d at 525 ("[A] husband and wife in an intact marriage cannot have two homesteads."). It is undisputed that the Manesses originally had a homestead in Miami that they jointly owned. When the Manesses moved from and sold their Miami homestead residence and moved to the Marathon Property in 1998, their homestead protection also "moved" to the Marathon Property and attached thereto until the Manesses take up a permanent homestead residence elsewhere. The Taylors assert, however, that because the Manesses failed to claim a homestead tax exemption, it evidences that the Marathon Property was not the Manesses' homestead. The fact that the Manesses did not claim a homestead exemption for tax purposes until recently is irrelevant to whether the homestead protections attach to the Marathon Property. The homestead exemption from forced sale is different from the homestead exemption as defined for tax purposes. S. Walls, Inc. v. Stilwell Corp., 810 So.2d 566, 569 (Fla. 5th DCA 2002). Failure to claim the homestead tax exemption is not evidence that property is not in fact homestead. Pierrepont v. Humphreys, 413 So.2d 140, 143 (Fla. 5th DCA 1982). Thus, we conclude that there is no genuine issue of material fact that the Marathon Property constitutes the Manesses' homestead property and consequently is protected from forced sale by the court in this instance.
In reaching our conclusion, we wish to address Mrs. Maness' homestead interest in the Marathon Property. The Taylors correctly point out that Mrs. Maness is not the title owner of the Marathon Property. However, the individual claiming the homestead exemption need not hold fee simple title to the property. Callava v. Feinberg, 864 So.2d 429, 431 (Fla. 3d DCA 2003). Article X, section 4 "does not designate how title to the property is to be held and it does not limit the estate that must be owned, i.e., fee simple, life estate, or some lesser interest." Stilwell, 810 So.2d at 569. Thus, even if Mrs. Maness owns only a beneficial interest in the Marathon Property, she is entitled to claim a homestead exemption to the forced sale of the property. See Callava, 864 So.2d at 431 (holding that even if divorced wife only owned a beneficial interest and not title interest in the residence constituting her homestead, she was nonetheless entitled to claim a homestead exemption from the forced sale of the property).
Further, the Florida Constitution places certain restrictions on the homestead owner's right to alienate his or her family's homestead property. Pierrepont, 413 So.2d at 142. Particularly applicable to this case is Mrs. Maness' homestead right pursuant to article X, section 4(c), which specifies that the owner of homestead real estate must, if married, be joined by his or her spouse in order to alienate the homestead by sale. As the Florida Supreme Court specified, this provision makes it "clear that both [spouses] must join in a conveyance of a homestead owned by one spouse to a third party." Jameson v. Jameson, 387 So.2d 351, 353 *564 (Fla.1980); see also High v. Jasper Mfg. Co., 57 Fla. 437, 49 So. 156, 157 (1909)(holding that where a married man is the title owner of homestead property, his wife must join in the conveyance in order to alienate the homestead real estate). Accordingly, in this case, as there is no dispute that Mrs. Maness did not join in the conveyance of the Marathon Property, which constitutes the Manesses' homestead property, the trial court properly concluded that there were no genuine issues of material fact and that the Manesses were entitled to judgment as a matter of law as to Count I of the Taylors' amended complaint.[2]
The Taylors further assert that the trial court erred in granting summary judgment in favor of the Manesses as to the fraud in the inducement and negligent misrepresentation claims based on the economic loss rule. In support thereof, the Taylors assert that a fraud in the inducement claim is an independent tort and actionable despite the existence of a contract between the parties. The Taylors are correct that a fraud in the inducement claim is not barred by the economic loss rule so long as the claim is based on conduct that is separate and distinct from the conduct constituting the breach of contract. La Pesca Grande Charters, Inc. v. Moran, 704 So.2d 710, 713 (Fla. 5th DCA 1998); see also Indem. Ins. Co. v. Am. Aviation Inc., 891 So.2d 532, 537 (Fla.2004)("Fraudulent inducement is an independent tort in that it requires proof of facts separate and distinct from the breach of contract.").
The Taylors, however, state that "[t]he term of the bargain that was falseManess owns the property and can sell itis the basis for the fraud in the inducement. This is the term of the bargain that led [them] to enter into the agreement and forego purchasing a different property." The first part of this statement, "Maness owns the property" is clearly not a misrepresentation as Mr. Maness is the title owner of the Marathon Property. The second part of the statement, that Mr. Maness can sell the property, is clearly embodied in the terms of the contract as "Mr. Maness' ability to sell" is not conduct that is separate and distinct from the conduct constituting the breach of contract. It is this particular conduct, Mr. Maness' inability to sell the Marathon Property, which forms the basis of the Taylors' breach of contract claim. Simply labeling a "fraud in the performance" claim as "fraud in the inducement" is not sufficient to avoid the economic loss rule. Similarly, the Taylors cannot escape the economic loss rule in their negligent misrepresentation claim as the alleged negligent misrepresentation relates to the performance of the contract. Consequently, as the Taylors are seeking to recover damages in tort for a matter which arises from a breach of contract claim, the trial court properly concluded that the economic loss rule barred recovery for the fraud in the inducement and negligent misrepresentation claims.
As to the tortious interference claim against Mrs. Maness, we agree, without reaching the issue of whether the economic loss rule applies, that the trial court properly dismissed this count. The Taylors' tortious interference claim is not a viable claim based upon our finding that Mrs. Maness has a homestead right in the Marathon Property and consequently, had an absolute legal right to interfere with the contract in order to protect her homestead *565 interest. Similarly, and as the Taylors readily admit, as the tortious interference claim fails, the civil conspiracy claim against the Manesses also fails and was properly dismissed by the trial court. Accordingly, we affirm.
Affirmed.
NOTES
[1] In this case, none of the three exceptions from forced sale of the homestead exemption apply. Thus, further discussion of the exceptions is not necessary.
[2] Based on our conclusion that Mrs. Maness has a homestead interest in the Marathon Property, we also affirm the trial court's grant of summary judgment in favor of Mrs. Maness as to her counterclaim seeking a declaration that the Marathon Property is her homestead.