SHEPHERD, J.
This is an appeal by an adult son, Shane Willens, of a final judgment of the circuit court, re-assessing to full value homestead property upon its devolution to Willens as the remainderman under a deed, pursuant to which his father retained *1115 a life estate in the property up until the date of his death.[1] The chief detriment of the re-assessment to the son is the loss of some eighteen years of cumulative three percent annual caps on the increase in assessed value of the property under the Save-Our-Homes Amendment, added to the Florida Constitution by popular initiative of the people of this state in 1992. See Art. VII, § 4(c), Fla. Const. (1992).
Willens argues that during all these years, he either was “legally or naturally dependent” upon his disabled father within the meaning of section 193.155, Florida Statutes (2007), of this state’s general law pertaining to the assessment of property for ad valorem tax purposes, entitling him to retain the benefit of the Save-Our-Homes driven assessment reduction enjoyed by his father as a result of the father’s more than two-decade ownership of the property prior to his death. Willens claims the benefit of the dependency carry-over by virtue of the fact, conceded by the property appraiser, that for some twenty years prior to his father’s death, Willens served as the full-time, in-home, resident caretaker for his stroke-bound father — with full encouragement and support of his siblings — to the exclusion of an outside career. While Willens’ multi-dec-ade sacrifice of himself for the benefit of his father is laudable, indeed heroic in its proportions, we nevertheless conclude, on de novo review, the trial court correctly found Willens was not “legally or naturally dependent” on his father during those years, within the meaning of the Florida law on the assessment of real property for ad valorem tax purposes. Accordingly, we affirm the re-assessment of the property to full value.
ANALYSIS
 It is undisputed that the property subject to this litigation was homestead property for ad valorem tax purposes for all of the years prior to the father’s death. See Art. VII, § 6(a), Fla. Const. (2007).[2] Thus, from 1992 to the date of his death, the father received the benefit of the Save-Our-Homes cap, limiting the annual increase of the assessed value of the property to a maximum of three percent per year. See Art. VII, § 4(d)(1), Fla. Const. (2007). However, this same constitutional provision requires, in subsection (3):
After any change of ownership, as provided by general law, homestead property shall be assessed at just value as of January 1 of the following year, unless the provisions of paragraph (8) [not applicable to this case] apply. Thereafter, the homestead shall be assessed as provided in this subsection.
Art. VII, § 4(d)(3), Fla. Const. (2007) (emphasis added). Acting pursuant to this authorization, the Florida legislature enacted section 193.155, Florida Statutes (2007), which, at the time of the father’s death, provided as follows in subsection (3):
(3) Except as provided in this subsection, property assessed under this sec *1116 tion shall be assessed at just value as of January 1 of the year following a change of ownership.... For the purpose of this section, a change in ownership means any sale, foreclosure, or transfer of legal title or beneficial title in equity to any person, except as provided in this subsection. There is no change of ownership if:
[[Image here]]
(d) Upon the death of the owner, the transfer is between the owner and another who is a permanent resident and is legally or naturally dependent upon the owner.
§ 193.155(3) (emphasis added). The phrase “legally or naturally dependent” is not defined.[3]
Where, as in this case, a statute does not define a term at issue, courts commonly resort to canons of statutory instruction to derive the proper meaning. See Nehme v. Smithkline Beecham Clinical Labs., Inc., 863 So.2d 201, 204 (Fla.2003). One of the fundamental tenets of statutory construction requires courts to give the words of a statute the plain and ordinary meaning usually attributed to them, unless a different meaning or connotation necessarily is implied from the manner or context in which the words are used. See State v. Brown, 412 So.2d 426, 428 (Fla. 4th DCA 1982) (citing 30 Fla. Jur. Statutes, § 87). When necessary, the plain and ordinary meaning of words can be ascertained by reference to a dictionary. See Nehme, 863 So.2d at 205.
A “dependent” is defined as, “One who relies on another for support; one not able to exist or sustain oneself without the power or aid of someone else.” Black’s Law Dictionary 503 (9th ed. 2009) (emphasis added). A “legal dependent” is defined as, “A person who is dependent according to the law; a person who derives principal support from another and usu. may invoke laws to enforce that support.” Black’s Law Dictionary 503 (9th ed. 2009). “Natural” is defined as being “1. In accord with the regular course of things-6. Of or relating to birth.” Black’s Law Dictionary 1126 (9th ed. 2009).
 As a general rule, the legal duty of a parent to support his child ceases at the age of majority. See Kern v. Kern, 360 So.2d 482, 484 (Fla. 4th DCA 1978). One exception to the general rule imposes a continuing duty on a parent to care for an adult child suffering from physical or mental deficiencies. Id. Willens is an able-bodied adult who is long past nonage. He possesses none of the traits an ordinary observer might associate with a dependent. He nevertheless contends the phrase “legally or naturally dependent” encompasses the concept of the “moral obligation,” pursuant to which he, with the full support of his siblings, undertook to keep his father alive for those many laudable years.
Conceding a dearth of Florida case law directly on point, Willens primarily adverts to a pre-Save-Our-Homes opinion of the Attorney General of the State of Florida, Op. Att’y Gen. Fla. 82-27 (1982), 1982 WL 174174, to support his argument.[4] There, the Attorney General opined, based *1117 upon his interpretation of “natural dependence” in article VII, section 6(a) of the Florida Constitution, that a parent living in another state, who purchases a home which is occupied by a child, attending college in this state whose disabilities of nonage have been removed, is eligible to make a claim for a homestead tax exemption. The Attorney General reasoned:
Since the state Constitution and statutes use the word “naturally” in opposition to “legally,” the latter portion of this definition would appeal' applicable so that the exemption could be available where property was the permanent residence of one who was morally dependent on the owner for support, even though not legally dependent on him.
Id. at *4. We find this opinion to be based upon questionable reasoning. First, college attendance, by its very nature, ordinarily is a temporary condition. Second, it is settled law that exemptions providing relief from taxation must be strictly construed. See Capital City Country Club, Inc. v. Tucker, 613 So.2d 448, 452 (Fla.1993). This opinion does not comport with that maxim. Third, the customary and ordinary understanding of a “moral obligation” is one that exists based only upon conscience and is not legally enforceable. See Black’s Law Dictionary 1180 (9th ed. 2009) (defining a “moral obligation” as “[a] duty that is based only on one’s conscience and that is not legally enforceable; an obligation with a purely moral basis, as opposed to a legal one”) (emphasis added). Cf. De La Mora v. Andonie, 51 So.3d 517 (Fla. 3d DCA 2010) (rejecting conclusion in same attorney general opinion that residence of a parent controls the place of residence of the child).
We find more persuasive an opinion of the Attorney General promulgated in 1938, at the time the homestead provision we must now interpret was approved by Florida’s citizens close to its present form.[5] In that opinion, the Attorney General answered a number of questions regarding the amendment, including what classes of persons are included in the phrase “legally or naturally dependent upon such owner.” The Attorney General opined:
I am of the opinion that all persons are entitled to claim this exemption where there are other persons legally dependent upon them for support in the sense that the word “legally” there means where they are required by law so to do; such as the duty cast upon the husband by law to support his wife and minor children. Section 5873, Compiled General Laws, 1927, provides for support in certain instances. I quote the same:
“The children of parents who are unable to support themselves shall be required to make provision for their support.” [6]
*1118 The words “naturally dependent” as used in the amendment, in my opinion, are persons related by blood to the owner of the property, and who otherwise qualify with the requirements set forth by the Supreme court of Florida in the case of Duval v. Hunt, et al., 34 Fla. 85, 15 So. 876. I quote the pertinent part thereof:
“ * * ⅜ He must show * * * that he or she was either from the disability of age, or nonage, physical or mental incapacity, coupled with the lack of property means, dependent in fact * ⅜ * for support. There must be, when adults claim such dependence, an actual inability to support themselves, and an actual dependence upon some one else for support, coupled with a reasonable expectation of support, or with some reasonable claim to support, from the deceased * * * ”
Op. Att’y Gen. Fla. 39-438, 445-46 (1939) (emphasis added). In this case, there is no proof Willens had an actual inability to support himself during any of the time he claims to have been dependent on his father.
We finally reject Willens effort to draw succor from an interpretation by the Florida courts of the “head of a family” requirement for claiming the benefit or protection of the “other” homestead provision of the Florida Constitution, found in every iteration of the provision from the time homestead protection first appeared in the Florida Constitution in 1868, see Art. IX, § 1, Fla. Const. (1868), until it was replaced by the term “natural person” in 1984.[7] See Article X, § 4(a), Fla. Const. (1984). Willens points out that during these years, a property owner could base his claim that his property was homestead on a moral obligation assumed by that individual to care for another. See, e.g., Caro v. Caro, 45 Fla. 203, 34 So. 309 (1903); De Cottes v. Clarkson, 43 Fla. 1, 29 So. 442 (1901); see also Johns v. Bowden 68 Fla. 32, 45, 66 So. 155, 159 (1914) (“When the natural relation of husband and wife or parent and child, or that of being in loco parentis, does not exist, the relation should be one in which an established and continuing personal authority, responsibility, and obligation actually rests upon as ‘the head of the family’ for the welfare of the others....”). He further points out when the ad valorem homestead exemption provision — the provision we are called upon to interpret in this case — first was proposed and approved by the people of the State of Florida in 1934, it not only appeared in Article X of the Florida Constitution, the same article as did its older cousin, see Art. X, Fla. Const. (1934), but also it included the same “head of a family” qualifying condition to receive the benefit.[8] Willens deduces from all of this that when the legislature drafted the homestead taxation provision for consideration by the electorate on November 6, 1934, it must have borrowed the “head of a family” *1119 phrase together with all of its meanings and connotations from the then existing “forced sale” homestead provision. Although Willens concedes the phrase “head of a family” was deleted from the ad valo-rem homestead provision in 1938, see supra note 5, he nevertheless argues it and its interpretive meanings were subsumed in the word “natural” in the phrase “legally or naturally dependent” which was then inserted. Id.
We find Willens’ argument creative and intriguing, but not persuasive. First, as Willens concedes, the “head of a family” requirement appeared in the ad valorem homestead taxation provision of the Florida Constitution, for a mere four years of its existence. We find no evidence it was interpreted. Second, this Court and others have often cautioned against relying upon other homestead exemptions as authority. See Taylor v. Maness, 941 So.2d 559, 563 (Fla. 3d DCA 2006) (“The homestead exemption from forced sale is different from the homestead exemption as defined for tax purposes.”); S. Walls, Inc., v. Stilwell Corp., 810 So.2d 566, 569-70 (Fla. 5th DCA 2002) (“We begin our analysis by noting that the concept of homestead will be given different meanings depending on the context in which it is used.”).[9] In this context, we note that, unlike the ad valorem homestead exemption, the “forced sale” provision is to be “liberally construed for the benefit of those whom it was designed to protect.” See Taylor, 941 So.2d at 562 (quoting Law v. Law, 738 So.2d 522, 524 (Fla. 4th DCA 1999)). We find no authority in the case law of this state, and Willens has cited none to us, which has held that a moral obligation to support an able-bodied adult child is sufficient to render that person “legally or naturally dependent upon the owner” for ad valorem homestead exemption purposes. We conclude, therefore, that more than mere familial ties must exist to bring a person under the change of ownership exception to the reassessment requirement of the ad valorem homestead tax exemption. Mr. Willens’ reward for his two-decade sacrifice in the name of his father lies with a higher authority.
Affirmed.

. The circuit courts of this state have original jurisdiction to consider all matters relating to property taxation, notwithstanding the fact the taxpayer might have, as in this case, contested the decision of the property appraiser before the value adjustment board. See § 194.171(1), Fla. Stat. (2008); Deluccio v. Havill, 25 So.3d 31 (Fla. 1st DCA 2009). Accordingly, the proceeding here is by appeal. See Art. V, § 4(b)(1), Fla. Const. (2008).

. This type of homestead is sometimes called "common homestead" to distinguish it from the less well-known, but important, life-time and death-time exemptions from creditor's claims, limitations on devise, and restrictions on alienation of separately defined homestead property appearing in article X, section 4 of the Florida Constitution. See Cutler v. Cutler, 994 So.2d 341, 343 (Fla. 3d DCA 2008).

. The phrase also appears in section 196.031(1 )(a) of the Florida Statutes (2007), a related section of the Florida Statutes, but which is not pertinent here. As is the case with respect to section 193.155(3), there is no definition of the phrase to be found there either.

. Opinions of the Attorney General are considered persuasive, but do not constitute binding authority on the courts of Florida. See Palm Beach County v. Hudspeth, 540 So.2d 147, 152 (Fla. 4th DCA 1989) (citing Beverly v. Div. of Beverage of the Dep’t of Bus. Regulation, 282 So.2d 657, 660 (Fla. 1st DCA 1973)).

. The homestead tax exemption initially was approved by the voters on November 6, 1934, in response to the collapse of the Florida land boom and Great Depression. See Art. X, § 7, Fla. Const. (1934); Senate Joint Resolution No. 582. In 1938, the provision was amended to read:
Section 7. Every person who has the legal title or beneficial tide in equity to real property in this State and who resides thereon and in good faith makes the same his or her permanent home, or the permanent home of another or others legally or naturally dependent upon said person, shall be entitled to an exemption from all taxation, except for assessments for special benefits, up to the assessed valuation of Five Thousand Dollars on the said home.... The Legislature may prescribe appropriate and reasonable laws regulating the manner of establishing the right to said exemption.
Art. X, § 7, Fla. Const. (1938); Senate Joint Resolution No. 21.

. This 1927 statute has been repealed. Compare § 5873, Comp. Gen’l Laws of Fla. (1927) with Comp. Gen’l Laws of Fla. (1927-1930 *1118 cumulative supp.). However, the effect of this law would not render Willens, the caregiver for his father, dependent upon his father. Rather, his father would have been dependent upon him.

. This provision is sometimes referred to as the "forced sale” homestead exemption. See supra note 2.

. At that time, the provision read:
Section 7. There shall be exempted from all taxation, other than special assessments for benefits, to every head of a family who is a citizen of and resides in the State of Florida, the homestead as defined in Article X of the Constitution of the State of Florida up to the valuation of $5,000.00; provided, however, that the title to said homestead may be vested in such head of a family or in his lawful wife residing upon such homestead or both.
Art. X, § 7, Fla. Const. (1934).

. See also Havoco of Am., Ltd. v. Hill, 790 So.2d 1018 (Fla.2001). The Havoco Court, while affirming the liberal construction to be given to the "forced sale” homestead exemption provisions, also noted that "[a] concomitant in harmony with th[e] rule of liberal construction is the rule of strict construction as applied to the exceptions." Id. at 1021. The Court recognized that one of the exceptions is the payment of taxes, and that the failure to pay them could result in forced sale.