CORTINAS, J.
 

 Favio Grisolia Sanchez (“Decedent”) moved his family to the United States in 2005 following a kidnapping attempt on his son, Fabrizzio Grisolia (“Son”), the previous year. Although he was attending school in Venezuela at the time of the attempted kidnapping, the Son was a United States citizen with an American pass
 
 *733
 
 port.
 
 [1]
 
 After arriving in the United States, the Decedent, along with the Son and Ivonne Grisolia (“Widow”), resided temporarily in an apartment in Sunny Isles Beach, Florida, owned by the Decedent’s mother until 2006 when the Decedent purchased an apartment (“Property”) in the same building. The Decedent lived in the Property until his death in 2009.
 
 [2]
 
 The Widow and Son also lived in the Property during that time and continue to reside there.
 

 In 2007, Eric and Carla Pfeffer made a personal loan of $500,000 to the Decedent which was memorialized by a promissory note. Following the filing of the petition for the administration of the Decedent’s estate (the “Estate”), the Pfeifers asserted a claim against the Estate to recover the remaining amounts due and owing on their loan. The Estate objected to the claim and filed a petition for the determination of the homestead status of the Property. Arguing that the Property was protected by Florida’s homestead exemption from forced sale, the Estate alleged that it was exempt from creditors such as the Pfei-fers. The Pfeffers objected to the petition for the determination of homestead status and, after an evidentiary hearing, the court took the issue under advisement and eventually entered an order denying the petition for homestead exemption. We reverse.
 

 The Florida Constitution provides in pertinent part:
 

 SECTION 4. Homestead; exemptions.—
 

 (a) There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field or other labor performed on the realty, the following property owned by a natural person:
 

 (1) a homestead, if located outside a municipality, to the extent of one hundred sixty acres of contiguous land and improvements thereon, which shall not be reduced without the owner’s consent by reason of subsequent inclusion in a municipality; or if located within a municipality, to the extent of one-half acre of contiguous land, upon which the exemption shall be limited to the residence of the owner or the owner’s family;
 

 (b) These exemptions shall inure to the surviving spouse or heirs of the owner.
 

 Art. X, § 4, Fla. Const, (emphasis added).
 

 In Florida, “courts have consistently held that the protections afforded by the ‘homestead exemption in article X, section 4 must be liberally construed.’ ”
 
 Taylor v. Maness,
 
 941 So.2d 559, 562 (Fla. 3d DCA 2006) (citation omitted). Furthermore, the homestead exemption jurisprudence of Florida courts “has long been guided by a policy favoring the liberal construction of the exemption: ‘Organic and statutory provisions relating to homestead exemptions should be liberally construed in the interest of the family home.’ ”
 
 Taylor,
 
 941 So.2d at 562 (citations omitted). Accordingly, the Florida homestead exemption from forced sale “is liberally construed for the benefit of those it was designed to protect.”
 
 Taylor,
 
 941 So.2d at 562 (quoting
 
 Law v. Law,
 
 738 So.2d 522, 524 (Fla. 4th DCA 1999)).
 

 
 *734
 
 The Florida Supreme Court has addressed the issue of homestead exemption and held that “although it is not necessary that the head of the family reside in the state or intend to make the property in question his permanent residence, he must establish that he intended to make this property his family’s permanent residence.”
 
 Cooke v. Uransky,
 
 412 So.2d 340, 341 (Fla.1982) (emphasis added).
 
 [3]
 
 We have also acknowledged that article X, section 4(a)(1) specifies that a homestead exemption is limited to the residence of the owner or the owner’s family and, “[a]c-cordingly, ‘the Florida Constitution does not require that the owner claiming homestead exemption reside on the property; it is sufficient that the owner’s family reside on the property.’ ”
 
 Beltran v. Kalb,
 
 63 So.3d 783, 787 (Fla. 3d DCA 2011) (quoting
 
 Nationwide Fin. Corp. of Colo. v. Thompson,
 
 400 So.2d 559, 561 (Fla. 1st DCA 1981) (emphasis added));
 
 see also Bayview Loan Servicing, LLC v. Giblin,
 
 9 So.3d 1276, 1278 (Fla. 4th DCA 2009) (“The language of article X, section 4 is clear and unambiguous. Here, the decedent was a natural person who owned property occupied by his wife and child at the time of his death; thus the property is homestead.”).
 

 In
 
 Cooke,
 
 the Florida Supreme Court addressed the homestead exemption sought by a bankruptcy debtor who was a Canadian citizen visiting the United States solely as a tourist.
 
 [4]
 
 While the Court agreed that “under the particular circumstances of [that] case,” the bankruptcy court was correct in determining that the homestead exemption did not apply, it noted:
 

 It appears that Mr. Cooke and his family were Canadian citizens temporarily in the United States as tourists and that none of them had the legal right to reside permanently in Florida. This being the case, Mr. Cooke could not legally formulate the requisite intent to make the Florida property his family’s permanent place of residence.
 

 Cooke,
 
 412 So.2d at 343 n. 1 (emphasis added). Although there is no case directly on point, the Florida Supreme Court’s analysis in
 
 Cooke
 
 highlights the fact that the debtor could not obtain the homestead exemption because neither he nor his family members had the legal right to reside in Florida and, under those circumstances, he could not formulate the requisite intent to have his family reside in Florida.
 

 Here, the situation is quite different. It is undisputed that the Decedent and the Widow were not in the United States as tourists. Instead, they were registered aliens legally allowed to reside in the United States under their temporary visa. Moreover, in the Son’s case, he was an American citizen who was born in
 
 *735
 
 Miami, Florida and had resided in Florida since his family moved here in 2005. The Widow testified at the evidentiary hearing that her intent, along with that of the Decedent, was that the family reside permanently in the Property due to safety concerns stemming from the attempted kidnapping of the Son in Venezuela. The Widow further testified that she and the Decedent had applied for permanent residence in the United States prior to the Decedent’s passing.
 
 [5]
 
 These specific circumstances are sufficient to demonstrate the Decedent’s intent to have his family permanently reside in Florida.
 

 Appellees cite to several bankruptcy cases where a debtor, because of his immigration status, could not formulate the requisite intent to make his property his permanent residence. These cases ignore that eligibility for the homestead exemption depends on the intent of the homesteader rather than that of the U.S. Citizenship and Immigration Services.
 
 See Cooke,
 
 412 So.2d at 341. Moreover, these bankruptcy cases are factually distinguishable. For example,
 
 In re Fodor,
 
 339 B.R. 519 (Bankr.M.D.Fla.2006), involved a Hungarian citizen who had a multiple-entry business visa that allowed him to travel freely between Europe and the United States, but barred him from remaining in the United States for more than 180 days at a time.
 
 Id.
 
 at 520. Moreover, although the debtor in
 
 Fodor
 
 married an American citizen prior to filing bankruptcy, he was granted permanent residence status on a conditional basis because the marriage was less than two years old and he needed to prove that he “did not get married to avoid the immigration laws of the United States.”
 
 Id.
 
 520. Likewise,
 
 In re Boone,
 
 134 B.R. 979 (Bankr.M.D.Fla.1991) involved a debtor who was a Canadian citizen whose husband had been given a visa for the purpose of setting up a business in the United States.
 
 Id.
 
 at 980. The debtor “obtained her visa only as the wife of the visa applicant.”
 
 Id.
 
 The debtor divorced her husband and the bankruptcy court acknowledged that the debtor’s right to remain in the United States “depended solely on the ... visa granted to her former husband. Accordingly, following her divorce and continued to date, the [dlebtor no longer ha[d] any legal right to remain in the United States and continue to work.”
 
 Id.
 
 at 980 (emphasis added). Similarly,
 
 In re Gilman,
 
 68 B.R. 374 (Bankr.S.D.Fla.1986) involved a debtor whose only identified connection to being in the United States was his possession of a visa that “permit[ted] the operation of a business enterprise.”
 
 Id.
 
 at 375. The bankruptcy court thus found that “based on the findings of fact as determined by this [c]ourt, it is clear that the [d]ebtor ... is not legally entitled to formulate the requisite intent to remain permanently within the State of Florida and declare the residence that he owns the permanent residence of his family.”
 
 Id.
 
 (emphasis added). We find these cases and their progeny unpersuasive and distinguishable as their outcomes relied on very specific factual circumstances which differ from the case before us.
 

 Other eases cited by Appellees are inap-posite as they involve Florida’s homestead exemption from taxation that is now set forth in article VII, section 6 of the Florida Constitution (“Tax Exemption”), rather than the homestead exemption from forced sale found in article X, section 4. For example, in
 
 Juarrero v. McNayr,
 
 157 So.2d 79 (1963), the Florida Supreme
 
 *736
 
 Court held that a citizen and former resident of a foreign country, who is in the United States solely on the authority of a temporary visa, “has no assurance that he can continue to reside in good faith for any fixed period of time in this country ... [and, therefore] does not have the legal ability to determine for himself his future status and does not have the ability legally to convert a temporary residence into a permanent home.”
 
 [6]
 

 Id.
 
 at 81. Likewise, in
 
 DeQuervain v. Desguin,
 
 927 So.2d 232 (Fla. 2d DCA 2006), the court found that homeowners who held only temporary visas “could not form the requisite intent to become permanent residents for purposes of the [Tax Exemption].”
 
 Id.
 
 at 233. However, the Second District also clarified that “because the [Tax Exemption] provides relief from an ad valorem tax, we must construe the statute strictly against [the homeowners].”
 
 Id.
 
 (citing
 
 Capital City Country Club, Inc. v. Tucker,
 
 613 So.2d 448, 452 (1993)). The strict construction applicable to the Tax Exemption stands in contrast to the liberal construction of the homestead exemption from forced sale at issue here.
 
 See Taylor,
 
 941 So.2d at 562;
 
 Law,
 
 738 So.2d at 524.
 

 Similarly, at the evidentiary hearing the Appellees raised the fact that the Decedent had never claimed a Tax Exemption on the Property. They further argue on appeal that a person in the United States under a temporary visa cannot meet the requirement of permanent residence or home, and therefore, cannot claim the Tax Exemption. Fla. Admin. Code R. 12D-7.007 (2002). We note that the portion of the Florida Administrative Code to which they cite applies to the Tax Exemption and not to the homestead exemption from forced sale at issue here. The probate court referenced in the order on appeal that “[i]n fact, the Decedent never claimed a [Tax Exemption] according to the Miami-Dade County Tax Rolls.” As we have previously stated, “[fjailure to claim the [Tax Exemption] is not evidence that property is not, in fact, homestead.”
 
 Taylor,
 
 941 So.2d at 563 (citing
 
 Pierrepont v. Humphreys,
 
 413 So.2d 140, 143 (Fla. 5th DCA 1982)). Clearly, “the homestead exemption from forced sale is different from the [Tax Exemption].”
 
 Taylor,
 
 941 So.2d at 563 (citing
 
 S. Walls, Inc. v. Stilwell Corp.,
 
 810 So.2d 566, 569 (Fla. 5th DCA 2002)).
 

 Under the specific facts of the this case, because the Decedent’s American-born Son resided in the Property since its purchase, the Decedent and Widow had a visa which gave them the legal right to reside in Florida, and were actively pursuing permanent residence status prior to the Decedent’s death, we find that the Decedent demonstrated the requisite intent to make the Property his family’s permanent residence. Based upon the foregoing, we reverse the probate court’s order denying the petition for declaration of homestead exemption.
 

 Reversed.
 

 [1]
 

 . The Son was bom in Miami, Florida in 2001.
 

 [2]
 

 . The Decedent died intestate.
 

 [3]
 

 . The
 
 Cooke
 
 decision contains the phrase "head of the family” because it predated the 1984 amendment to article X, section 4, which replaced "head of the family” with "a natural person” and "expanded the class of persons who can take advantage of the homestead provision and its protections.”
 
 Pub. Health Trust of Dade Cnty. v. Lopez,
 
 531 So.2d 946, 948 (Fla.1988). The 1984 amendment does not affect the reasoning of the
 
 Cooke
 
 decision.
 

 [4]
 

 . The Court noted Mr. Cooke’s status under federal law as follows:
 

 Canadian citizens are not required to obtain a visa in order to enter the United States as visitors, but they must have a permanent visa if they intend to reside in this country indefinitely and must register just like other aliens as a resident alien and be in possession of an alien registration receipt card at all times. Title 8 U.S.C. Sec. 1304; 8 C.F.R. Secs. 211.1, 212.1 and 245 (1979).
 

 Cooke,
 
 412 So.2d at 342.
 

 [5]
 

 . The Widow has since renewed her temporary visa and had apparently continued her efforts to become a permanent resident.
 

 [6]
 

 . When
 
 Juarrero
 
 was decided, the Tax Exemption was set forth in article X, section 7, but it has since been renumbered to article VII, section 6 of the Florida Constitution. The Tax Exemption is presently implemented by Chapter 196, Florida Statutes, and entitles an owner to an exemption from taxation up to the assessed valuation of $25,000 on his homestead property as defined in article VII, section 6 of the Florida Constitution.
 
 See
 
 § 196.031, Fla. Stat.