## IN RE: Gloria OYOLA, Debtor.

### Case No. 8:15–bk–08716–MGW

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Signed August 24, 2017

Laura M. Gallo, Gallo Law, PA, Tampa, FL, for Debtor.

Christine L. Herendeen, Tampa, FL, for Trustee.

## ORDER AND MEMORANDUM OPINION OVERRULING TRUSTEE'S OBJECTION TO DEBTOR'S CLAIM OF EXEMPTIONS

Michael G. Williamson, Chief United States Bankruptcy Judge

Ordinarily, a debtor who is not a U.S. citizen cannot legally formulate the intent to reside here permanently for homestead purposes unless the debtor is a permanent resident as of the petition date. Here, the Debtor was not a permanent resident as of the petition date. So she cannot legally intend to reside here permanently. But the Debtor's adult daughter, who is living in the Debtor's house, was a permanent resident as of the petition date. And her minor granddaughter, who is also living in her house, was a U.S. citizen. Because the Florida Constitution permits an owner to claim property as homestead if the owner's family is living on the property, the Debtor is entitled to claim the homestead exemption.

## Background

The Debtor is a Colombian citizen.[1] It appears she came to the United States, along with her daughter, sometime before 1997.[2] Her initial basis for entry into the U.S. is unclear. But in June 1997, the Debtor married a U.S. citizen,[3] which would have made her immediately eligible for conditional permanent residence.[4] In two years, she could have had those conditions removed, making her eligible for permanent residence—i.e., a "green card."[5] For some reason, perhaps because her marriage ended after only a few years, the Debtor never obtained her green card.[6]

At some point, the Debtor apparently left the country, only to later return. It is undisputed, though, that the Debtor has been living in the U.S. since 2008 or so. The Debtor currently lives in her home at 12143 Armenia Gables Circle, Apt. #12143, Tampa, Florida, with her 30-year-old daughter, who was a permanent resident at the time this case was filed, as well her four-year-old granddaughter, who is a U.S. citizen.

In 2015, the Debtor filed for chapter 7 bankruptcy.[7] In her schedules, the Debtor claimed the Armenia Gables Circle property as exempt homestead.[8] There is no dispute the Debtor currently lives at the Armenia Gables Circle property and that she (subjectively) intends to reside there.[9] Although she will be eligible for a green card once her daughter becomes a citizen, which is expected to happen soon, the Debtor was not a permanent resident at the time she filed this case.[10]

The Trustee objected to the Debtor's homestead exemption.[11] Because the Debtor was not a permanent resident at the time she filed, the Trustee says the Debtor cannot legally form the intent to reside at the Armenia Gables Circle property permanently, which the Trustee argues is a requirement to claim the homestead exemption.[12] The Court must now decide whether the fact that the Debtor was not a permanent resident as of the petition date bars her from claiming the homestead exemption.

## Conclusions of Law

More than ten years ago, this Court, in *In re Fodor*, considered whether a debtor who was not a permanent resident as of the petition date could claim the homestead exemption.[13] In *Fodor*, the debtor was a Hungarian citizen. He married a U.S. citizen ten months before filing for bankruptcy, which meant he was eligible for conditional permanent resident status based on the marriage.[14] But the debtor did not obtain his conditional permanent residence until three months after filing for bankruptcy.[15] This Court ruled, in sustaining the objection to the Debtor's homestead exemption claim, that the debtor

1. Doc. No. 14 at Ex. A.

2. *Id.* at ¶ 8.

3. *Id.*

4. 8 U.S.C. § 1186a.

5. *Id.*

6. Doc. No. 14 at ¶ 8.

7. Doc. No. 1.

8. *Id.* at Schedule C.

9. Doc. No. 14 at ¶ 7.

10. *Id.*

11. Doc. No. 11.

12. *Id.* at ¶ 5.

13. 339 B.R. 519, 522 (Bankr. M.D. Fla. 2006).

14. *Id.* at 520 (citing 8 U.S.C. § 1186a(2000)).

15. *Id.* at 520.

could not legally formulate the intent to reside at his house permanently because he was not a permanent resident as of the petition date.[16]

At first glance, the rationale for denying the homestead exemption in *Fodor* appears to apply equally here. Like the debtor in *Fodor*, the Debtor here was not a permanent resident as of the petition date. It's true that the Debtor will likely be eligible for permanent residence once her daughter becomes a U.S. citizen, which is expected to happen soon (or may have already happened). And that was true of the debtor in *Fodor*. In fact, the debtor in *Fodor* actually obtained his permanent residence just three months after the petition date. But that was not enough to support the homestead exemption. The Debtor, however, argues the Court should follow the Third District Court of Appeal's decision five years ago in *Grisolia v. Pfeffer*.[17]

In *Grisolia*, the Third District Court of Appeal held that a Venezuelan citizen here on a temporary visa could claim the homestead exemption.[18] In that case, Favio Grisolia Sanchez and Ivonne Grisolia, both Venezuelan citizens, moved to the U.S. after a kidnapping attempt on their son, a U.S. citizen, who was four years old at the time.[19] Later, Favio died, and two of his creditors made a claim against his estate. In response, his estate sought a determination from the probate court that Favio's apartment, where his wife and son were still living, was exempt homestead.[20] After

the probate court denied the homestead claim, his estate appealed.

On appeal, the *Grisolia* court, relying on the Florida Supreme Court's decision in *In re Cooke*, correctly noted that the Florida Constitution permits an owner to claim property as homestead, even if the owner is not living there, so long as the owner's family is living on the property:

> The Florida Supreme Court has addressed the issue of homestead exemption and held that "although it is not necessary that the head of the family reside in the state or intend to make the property in question his permanent residence, he must establish that he intended to make his property his family's permanent residence." We have also acknowledged that article X, section 4(a)(1) specifies that a homestead exemption is limited to the residence of the owner or the owner's family and, "[a]ccordingly, 'the Florida Constitution does not require that the owner claiming homestead exemption reside on the property; it is sufficient that the owner's family reside on the property.' "[21]

The *Grisolia* court noted that in *Cooke*, the Florida Supreme Court rejected the homestead claim by Canadian citizens temporarily in the U.S. because none of them had the legal right to reside in Florida.[22] But in *Grisolia*, Favio's son, who was a U.S. citizen, had the legal right to reside in Florida permanently, so the *Grisolia* court held that the probate court was wrong in determining the property was not homestead.[23]

16. *Id.* at 523.

17. 77 So.3d 732 (Fla. 3d DCA 2011).

18. *Id.* at 736.

19. *Id.* at 733.

20. *Id.*

21. *Id.* at 734 (quoting *In re Cooke (Cooke v. Uranksy)*, 412 So.2d 340, 343 (Fla. 1982)) (citations omitted).

22. *Id.* (discussing *Cooke*, 412 So.2d at 343).

23. *Id.* at 736.

This case is similar to *Grisolia* in one significant respect. Like in *Grisolia*, the Debtor's family has the legal right to reside in Florida permanently. Here, the Debtor's daughter is a permanent resident (and may be a citizen); and the Debtor's granddaughter is a U.S. citizen. But the cases are different in one crucial respect: unlike in *Grisolia*, the Debtor's daughter is not a minor. This case, then, turns on whether the homestead exemption's protection of a family residence extends to property occupied by the owner and her adult child.

Within the last ten years, two Florida bankruptcy courts have refused to extend the homestead exemption to property occupied by a debtor's adult child.[24] In *In re Wilson*, the court allowed the debtor to claim a 640–square–foot apartment above a nightclub as homestead.[25] But ·the court rejected the debtor's contention that because his son lived in a room in the nightclub, the nightclub was part of the debtor's homestead.[26] More recently, in *In re Fowler*, the debtor claimed two adjoining parcels—one occupied by the debtor and the other by her adult daughter—were homestead.[27] Although the court allowed the debtor to exempt the parcel she lived in, it ruled the fact that the debtor's daughter lived in the second parcel did not justify extending the homestead exemption to that parcel.[28] The basis underlying both decisions was the same: While the homestead exemption protects property occupied by the owner's family, adult children are not "family" for homestead purposes.[29]

■ In determining that the adult children were not "family" for homestead purposes, both courts articulated the test for determining whether a "family" exists as follows:

> For purposes of the homestead exemption, the test for family is: "(1) A legal duty to maintain arising out of the relationship *and* (2) a continuing communal living by at least two individuals under circumstances where one is regarded as the person in charge." Under this test, the "head of the family must not only be obligated to, but must actually support such dependents."[30]

Because under Florida law, a parent's duty to support a child generally ends when the child reaches the age of majority, both courts concluded no "family" existed for homestead purposes under the first test.[31]

■ Although it doesn't appear that the debtor in either case would have satisfied the second test, *Wilson* and *Fowler* could be read to suggest that it was unnecessary to address the second test because the debtors in both cases failed the first one. After all, the court in both cases use the conjunctive "and" to join the tests. And in both cases, the court declined to address the second test after concluding the debtor failed the first one. The tests articulated by the *Wilson* and *Fowler* courts, however, should actually be read in the disjunctive.

Both *Wilson* and *Fowler* trace the tests for "family" back to the First District Court of Appeal's decision in *Heard v. Mathis*.[32] But the *Heard* court prefaced the language *Wilson* and *Fowler* quote by

**24.** *In re Fowler*, 2016 WL 1444195, at *2 (Bankr. M.D. Fla. 2016); *In re Wilson*, 393 B.R. 778, 783–84 (Bankr. S.D. Fla. 2008).

**25.** *Wilson*, 393 B.R. at 782.

**26.** *Id.* at 783–84.

**27.** *Fowler*, 2016 WL 1444195, at *1.

**28.** *Id.* at 2–3.

**29.** *Wilson*, 393 B.R. at 783; *Fowler*, 2016 WL 1444195, at *2.

**30.** *Wilson*, 393 B.R. at 783 (quoting *Heard v. Mathis*, 344 So.2d 651, 654 (Fla. 1st DCA 1977)) (emphasis added) (citations omitted); *Fowler*, 2016 WL 1444195, at *2 (quoting *Wilson* ) (citations omitted).

**31.** *Wilson*, 393 B.R. at 783; *Fowler*, 2016 WL 1444195, at *2.

**32.** 344 So.2d 651, 654 (Fla. 1st DCA 1977).

stating that the "tests" (plural) "must be met either singly or in combination."[33] "Singly," of course, means "individually."[34] Moreover, the source for the tests articulated in *Heard*, and later in *Wilson* and *Fowler*, is a law review article by Harold Crosby and George Miller attempting to delineate the main principles of the homestead exemption.[35] After noting that much of the homestead litigation had centered on the meaning of family headship, Crosby and Miller explained in their law review article that the reported decisions (which were too numerous to cite) revealed that courts at the time had traditionally followed the two tests, "which may be met together *or in the alternative.*"[36]

■ This is consistent with how Florida courts have since treated the homestead exemption. Numerous Florida courts have explained that Florida homestead law recognizes both "family in law" and "family in fact."[37] A "family in law" exists where there is a legal duty to maintain.[38] A "family in fact" exists where there is no legal duty to maintain but there is communal living by at least two individuals in circumstances where one is regarded as being in charge.[39] Some courts have explained that the "family in fact" arises out of a moral—rather than legal—duty to support.[40]

■ Here, there is no "family in law." Because the Debtor's daughter has reached the age of majority, the Debtor no longer has a legal obligation to support her. The Debtor's granddaughter is a minor. But the Court is unaware of any legal obligation for the Debtor to support her granddaughter. The Court does conclude, however, that there is a "family in fact."

More than a century ago, in *Caro v. Caro*, the Florida Supreme Court recognized that a parent and adult children can constitute a "family" for homestead purposes.[41] There, Mary Caro devised her home to two daughters she was living with.[42] Caro's other heirs challenged the devise under article X, section 1 of the 1885 Florida Constitution, which prohibited a head of family from disposing of their homestead by will.[43]

On appeal, the Florida Supreme Court held that Caro was a head of family for homestead purposes. The Court noted that the parties had stipulated that Caro's two daughters who inherited the home had been living with Caro continuously.[44] Although Caro supplied the food for the household, both her daughters had been earning enough money through their sewing to supply all their wants (except their food).[45] The daughters had kept house,

---

33. *Id.*

34. Merriam–Webster Dictionary, https://www.merriam-webster.com/dictionary/singly.

35. *Id.* (citing Crosby & Miller, *Our Legal Chameleon, The Florida Homestead Exemption*, 2 U. Fla. L. Rev. 12 (1949)).

36. *Id.* at 24 (emphasis added).

37. *See, e.g., Flannery v. Green*, 482 So.2d 400, 402 (Fla. 2d DCA 1985); *Routman v. Desvarieux*, 467 So.2d 1090, 1090 n.1 (Fla. 3d DCA 1985); *In re Schorr's Estate*, 409 So.2d 487, 489–90 (Fla. 4th 1981).

38. *Flannery*, 482 So.2d at 402; *Routman*, 467 So.2d at 1090 n.1.

39. *Flannery*, 482 So.2d at 402; *Routman*, 467 So.2d at 1090 n.1.

40. *Routman*, 467 So.2d at 1090 n.1; *In re Rivera*, 5 B.R. 313, 315 (Bankr. M.D. Fla. 1980).

41. 45 Fla. 203, 34 So. 309 (Fla. 1903).

42. *Id.* at 206, 34 So. 309.

43. *Id.* at 207, 34 So. 309.

44. *Id.* at 206, 34 So. 309.

45. *Id.*

880

tended to Caro's personal wants, and tended to her outside business affairs.[46] The Florida Supreme Court held those stipulated facts were sufficient to support a finding that Caro was the head of family, even though her daughters were no longer minors.[47]

Here, the Court concludes the Debtor is living as a family with her adult daughter and minor granddaughter. In fact, at no point has the Trustee disputed that the Debtor is living communally with her daughter and granddaughter and that her daughter and granddaughter recognize her as the person in charge. The Trustee's only opposition to the exemption is that the Debtor cannot have the intent to reside here permanently, which is irrelevant if the Debtor intends to make her home her family's permanent residence.

### Conclusion

It may be true, as the Trustee argues, that the Debtor cannot legally intend to reside here permanently. But as the Florida Supreme Court explained more than 30 years ago,[48] a property owner need not reside here permanently so long as she intends for her family to do so. Because the Debtor intends for her daughter and granddaughter to reside here permanently, she is entitled to claim the homestead exemption.

Accordingly, it is

**ORDERED:**

1. The Trustee's objection to the Debtor's homestead exemption claim is OVERRULED.

**46.** *Id.*

**47.** *Id.* at 207, 34 So. 309.

2. The Debtor's home located at 12143 Armenia Gables Circle, Apt. #12143, Tampa, Florida, is exempt homestead.

**48.** *In re Cooke (Cooke v. Uranksy)*, 412 So.2d 340, 341 (Fla. 1982).